[No. D019477. Fourth Dist., Div. One. Sept. 30, 1994.]

THE PEOPLE, Plaintiff and Appellant, v.
CHARLES EARL ROSS, Defendant and Respondent.

**COUNSEL**

Edwin L. Miller, Jr., District Attorney, Richard J. Neely, Assistant District Attorney, Edward J. Mantyla and Thomas F. McArdle, Deputy District Attorneys, for Plaintiff and Appellant.

Francis J. Bardsley, Public Defender, Richard P. Siref and Terry Zimmerman, Deputy Public Defenders, for Defendant and Respondent.

**OPINION**

NARES, J.—A jury convicted Charles Earl Ross (Ross) of voluntary manslaughter in violation of Penal Code section 192, subdivision (a),[1] and also found it true that Ross personally used a firearm in the commission of the offense within the meaning of section 12022.5, subdivision (a).[2] Ross was sentenced to the lower term of three years for the voluntary manslaughter conviction.

The court then fixed the term on the section 12022.5, subdivision (a) firearm use enhancement at the lower term of three years, but stayed the imposition of the sentence on the enhancement pursuant to section 654.[3] The People appeal, contending the trial court was not authorized to stay imposition of the sentence enhancement provided by section 12022.5, subdivision (a). We agree, and order the judgment modified to reflect imposition of the consecutive term mandated by section 12022.5, subdivision (a).

---

[1]All statutory references are to the Penal Code.

[2]Section 12022.5, subdivision (a) in pertinent part provides: ". . . [A]ny person who personally uses a firearm in the commission . . . of a felony shall, upon conviction of that felony . . . , in addition and consecutive to the punishment prescribed for the felony . . . of which he or she has been convicted, be punished by an additional term of imprisonment in the state prison for three, four, or five years, unless use of a firearm is an element of the offense of which he or she was convicted. . . ."

[3]Section 654 provides: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other."

## FACTS

In the spring of 1992, Charles Earl Ross had an apartment on Swift Avenue from which he dealt cocaine. Ross also was the owner of a 1980 Cadillac Seville, beige over brown, which he prized highly.[4] Early in the morning hours of May 19, 1992, Ross was at the Swift Avenue apartment, not to deal drugs (he testified), but only because he was then expecting to receive a shipment of drugs for resale. With Ross in the Swift Avenue apartment that evening was his girlfriend, Gina Gafford (Gafford).

Marshall Hill (Hill) was a car thief recently released from state prison. Hill and a friend made two mistakes that night. The first mistake was stealing Ross's Seville. The second (and nearly incomprehensible) mistake Hill made was to return with the Seville to the same area of Swift Avenue where he had stolen it,[5] where Hill left the Seville parked with the engine running, while he finished stripping it and putting the items into another stolen vehicle.

Gafford had noticed that Ross's Seville had been taken. Gafford also noticed when it returned, and that there was a man removing items from it, and communicated these matters to Ross. Ross was of course armed, as is usual in the drug trade, and his weapon of choice (carried that evening in his waistband) was a .38 Special revolver, with a mix of six hollow point and other loads.

As Ross approached his Seville he saw substantial damage to the interior (the steering wheel and dashboard sustained damage consistent with auto theft). He also saw two men in the other car parked along the curb next to the Seville. Hill, seated on the driver's side, was wearing a San Antonio Spurs sports team jacket which Ross had left in his Seville. Ross, angered by the theft and damage to his car (and the sight of Hill wearing his sports jacket) walked up between the cars and began yelling at the two men.

During the ensuing argument, Ross saw a flash of metal when Hill suddenly raised his right hand.[6] Ross testified that when Hill turned to face him he feared for his life because he believed Hill had a gun. Ross stepped back, pulled his .38 revolver from his waist and fired a single shot at Hill. The bullet hit Hill in the left side of the forehead, killing him. The other man got out of the car, yelling that he did not do it, and ran away. Ross drove off in his Cadillac.

---

[4] In fact, Ross was also known by his "street name" of "Cadillac," indicating his attachment to his vehicle.

[5] Ross told Gafford that Hill and his crime partner were "idiots" for returning the Cadillac to the site where they had stolen it before stripping it.

[6] The police found Hill clutching a large slot-head screwdriver in his right hand. This is a tool commonly used in automobile thefts.

## PROCEDURE

The information charged Ross with one count of murder, in violation of section 187, subdivision (a), and with having personally used a firearm, in violation of section 12022.5, subdivision (a). The jury found Ross guilty of having committed a voluntary manslaughter, in violation of section 192, subdivision (a). The jury also found it to be true that Ross had personally used a firearm during the commission of the offense, within the meaning of section 12022.5, subdivision (a).

The court sentenced Ross to the lower term of three years in prison for the voluntary manslaughter conviction and imposed the lower term for the gun use enhancement but stayed it pursuant to section 654. The court denied the People's motion to correct the sentence. These proceedings followed.

## SCOPE OF REVIEW

The question of whether section 654 applies in general to enhancements has been left undecided by our Supreme Court. (*People* v. *Jones* (1993) 5 Cal.4th 1142, 1152 [22 Cal.Rptr.2d 753, 857 P.2d 1163]; *People* v. *King* (1993) 5 Cal.4th 59, 78, fn. 5 [19 Cal.Rptr.2d 233, 851 P.2d 27].) For the reasons which follow, we do not decide the general question, but the more limited issue of whether section 654 may be applied to a firearms enhancement in a homicide which was committed by the use of a firearm.

## DISCUSSION

Resolution of the present question requires us first to determine whether the stated basis for the trial court's action, that section 654 applied because the enhancement and the crime arose from the same act, was correct. If not, we then must proceed to determine whether there exists any alternative basis for affirmance of the sentence which was imposed below. We proceed to do so.

### I. *Element of the Offense*

In imposing sentence, the trial judge stated that he found the use of a firearm in this case to be "the identical act as the crime itself" and thus the "three year lower term on the enhancement [is] stayed under section 654 . . . ." Later on, the court observed that section 654 "establishes the princip[le] that there's a double jeopardy type concept here. You don't hit him twice for the very same thing. . . . This is a very narrow factual situation . . . ." That is, because the gun use was also the act accomplishing

the homicide, the trial judge reasoned, section 654 applied in these circumstances.

But under the plain language of section 12022.5, subdivision (a), upon a true finding of an enhancement for the use of a firearm, a defendant *"shall . . . in addition and consecutive to the punishment prescribed for the felony . . . of which he or she has been convicted, be punished by an additional term of imprisonment in the state prison for three, four, or five years, unless use of a firearm is an element of the offense of which he or she was convicted."* (Italics added.)

■ Use of a firearm is an element of the offense only if it is "an essential component of the legal definition of the crime *considered in the abstract.*" (*People* v. *Read* (1983) 142 Cal.App.3d 900, 903 [191 Cal.Rptr. 305], italics added.) In that case, it was specifically held that "firearm use is not an element of the offense of . . . manslaughter and the Legislature clearly intended to impose more severe penalties for homicides committed with the use of a *firearm.* [Citation.]" (*Id.* at pp. 902-903, italics in original.)

*Read* has also been followed in *People* v. *Zamora* (1991) 230 Cal.App.3d 1627, 1636 [282 Cal.Rptr. 100]: "The phrase 'element of the offense' has a settled meaning in California law, i.e., an essential component of the legal definition of the crime considered in the abstract. [Citation.]"[7]

Here, of course, the trial judge was focused upon the manner of committing this homicide in the particular, rather than in the abstract. While the particular case involved a use of a firearm, quite plainly the use of a firearm is not an element of voluntary manslaughter *in the abstract*, and the trial judge erred in relying upon this as a basis for staying imposition of the firearms use enhancement here.

---

[7]Ross cites to the assertedly contrary case of *People* v. *McGee* (1993) 15 Cal.App.4th 107, 115 [19 Cal.Rptr.2d 12], which held that "in determining whether use of a deadly weapon . . . is an element of a section 245, subdivision (a)(1) conviction, the question is not simply whether, in the abstract, the section can be violated without using such a weapon. Rather, the conduct of the accused, i.e., the means by which he or she violated the statute, must be considered."

On its face, *McGee* appears to contradict *Read*, but we do not so read the case. Instead, we believe the quoted language from *McGee* must be limited to the peculiar situation of a statute (§ 245, subd. (a)(1)) which can be violated in two specified ways, "by assaulting a person with a deadly weapon other than a firearm *or* by means of force likely to produce great bodily injury." (*People* v. *McGee, supra*, 15 Cal.App.4th at p. 114, italics in original.)

Whereas the statute in *McGee* had two alternative forms, as to one of which weapons use *was* an element, in contrast this case presents no such problem. The definition in section 192 of the offense of manslaughter ("the unlawful killing of a human being without malice") nowhere includes, as an element of that offense, the use of a firearm. For that reason *McGee* has no application to this case.

## II.  *Applicability of Section 654*

Having determined that use of the firearm was not an element of the offense, we next must inquire whether there is any other basis for staying imposition of section 12022.5, subdivision (a) pursuant to section 654, because we review the trial judge's ruling, not his reasons for so ruling.

As our Supreme Court has pointed out, "Section 1170.1, subdivision (d), provides that when the court imposes a prison sentence for a felony (see generally § 1170), 'the court shall also impose the additional terms provided' in 16 specified sections of the Penal Code and the Health and Safety Code, including section 12022.5, 'unless the additional punishment is stricken pursuant to [section 1170.1,] subdivision (h).' " (*People* v. *Thomas* (1992) 4 Cal.4th 206, 209 [14 Cal.Rptr.2d 174, 841 P.2d 159], quoting the statute.)

Before its 1989 amendment, section 1170.1, subdivision (h) authorized the striking of certain specified enhancements, including the enhancement provided by section 12022.5, if a court found "circumstances in mitigation of the additional punishment." However, the 1989 amendments (Stats. 1989, ch. 1044) to section 1170.1, subdivision (h) specifically *deleted* section 12022.5, subdivision (a) from the list of enhancements a court could strike.

Thus we must determine whether the trial court's reliance on section 654 to stay the imposition of the enhancement is consistent with the other statutes governing sentencing.[8] As our Supreme Court has noted, decisions at the appellate level are split on the question whether section 654 applies to enhancements generally.[9] (*People* v. *Jones, supra,* 5 Cal.4th at p. 1152.)

The present case is distinguishable from most of those discussing the matter, however, because the majority of those cases concern imposing

---

[8]Ross offers as an alternative rationale for the trial court's sentence the argument that imposition of the statute on these facts would constitute disproportionately cruel and unusual punishment, relying upon *People* v. *Dillon* (1983) 34 Cal.3d 441, 477-482 [194 Cal.Rptr. 390, 668 P.2d 697]. As *Dillon* makes clear, however, this is a fact-bound inquiry. (*Ibid.*) Because the argument was not urged below, we may not consider it for the first time on appeal. (*People* v. *Mickle* (1991) 54 Cal.3d 140, 186 [284 Cal.Rptr. 511, 814 P.2d 290].)

[9]"The appellate courts have disagreed on whether section 654 applies to enhancements. (Compare, e.g., *People* v. *Rodriguez* (1988) 206 Cal.App.3d 517, 519 [253 Cal.Rptr. 633] with *People* v. *Hopkins* (1985) 167 Cal.App.3d 110, 117-118 [212 Cal.Rptr. 888].)" (*People* v. *Jones, supra,* 5 Cal.4th at p. 1152.)

This court's own decisions have gone from holding that "[s]ection 654 . . . is inapplicable to enhancements . . ." (*People* v. *Boerner* (1981) 120 Cal.App.3d 506, 511 [174 Cal.Rptr. 629]) to a more recent holding that "it is now well accepted that section 654 applies to enhancements. . . ." (*People* v. *Dobson* (1988) 205 Cal.App.3d 496, 501 [252 Cal.Rptr. 423]; but see *People* v. *King, supra,* 5 Cal.4th at p. 78, fn. 5.). However, "[w]e need not decide this issue to resolve the specific question now before us." (*People* v. *Jones, supra,* 5 Cal.4th at p. 1152.)

punishment for two or more crimes committed on a single occasion, while this case concerns instead a single enhancement attached to a single criminal act. Accordingly, we need not address the issue of whether section 654 applies to enhancements in general. Rather, we focus our attention only on whether section 654 applies to a single gun use enhancement which is in turn attached to a single conviction of voluntary manslaughter.

Application of section 654 to this case would clearly be inconsistent with section 1170.1, subdivision (h). To the extent section 654 could formerly have been interpreted to bar imposition of the enhancement under the facts of this case, it has been superseded by section 1170.1 as it has read since its 1989 amendment by Statutes 1989, chapter 1044.

The purpose behind section 12022.5, subdivision (a) is to deter the use of firearms in the commission of violent crimes by prescribing additional punishment for each use. (See, e.g., *People* v. *Fierro* (1991) 1 Cal.4th 173, 225-226 [3 Cal.Rptr.2d 426, 821 P.2d 1302].) The 1989 section 1170.1, subdivision (h) amendment demonstrates a further intent to combat the increasing use of firearms in the commission of felonies with a *mandatory* imposition of 12022.5, subdivision (a).

The Supreme Court has even more recently emphasized the importance of imposing 12022.5, subdivision (a). (*People* v. *Thomas, supra,* 4 Cal.4th at pp. 209-213.) In *Thomas*, the court determined that the proscription against striking a section 12022.5, subdivision (a) enhancement under 1170.1, subdivision (h) also prevents such a striking under section 1385.[10] (*People* v. *Thomas, supra,* 4 Cal.4th at pp. 212-213.) The court stated the amendment to section 1170.1, subdivision (h) was intended to delete the trial court's authorization to strike the additional enhancement involving the personal use of a firearm in the commission of a felony. (*People* v. *Thomas, supra,* 4 Cal.4th at p. 211.)

Application of section 654 to the facts at hand would severely hamper the efficacy of section 12022.5, subdivision (a) by preventing imposition of the enhancement in many instances of murder and manslaughter. The trial court mistakenly concluded that the facts of this case were unusual because the firearm use was "legal" until the moment Ross pulled the trigger. That is, as

---

[10]Section 1385, subdivision (a) provides that a judge may ". . . in furtherance of justice, order an action to be dismissed. . . ."

a victim of auto theft, Ross had a "right" to confront the men and also a "right" to be armed with a firearm while so doing.[11]

However, in homicide cases, the moment at which the defendant shoots the victim is frequently the turning point between legal and illegal firearm use. ■ The additional punishment prescribed by section 12022.5, subdivision (a) is appropriate because this voluntary manslaughter was accomplished with a firearm. Whether the firearm possession here was legal or illegal before Ross committed the crime is immaterial to imposition of the mandatory gun use enhancement.

The trial court here concluded the enhancement should be stayed under section 654 because "it's the identical act as the crime itself." However, Ross's use of the firearm was not a crime in and of itself. The crime was the extinction of a human life, determined by the jury to be a voluntary manslaughter as defined in section 192, subdivision (a). The gun was simply the method selected by Ross to accomplish the crime, and the particular method selected subjects Ross to an additional penalty. Because the underlying crime and the enhancement are not identical, there is and can be no double punishment under section 654.

Finally, we must observe, as did another court, that the result reached here upholds legislative policy:

"The policy reasons favoring application of [section 12022.5] to murder or assault with a deadly weapon where a firearm is used are equally applicable to involuntary manslaughter. The purpose of section 12022.5 is to discourage the use of firearms, and more fundamentally, to prevent people from being killed. [Citations.]

"Had [Ross] not brandished a *firearm*, the victim in this case might be alive. Imposition of an additional penalty for use of a firearm is consistent with the language and purpose of the statute, and is eminently reasonable." (*People* v. *Read, supra,* 142 Cal.App.3d at p. 906, italics in original.)

[11]The court also stated Ross "would have been hailed as a hero" if he had used the gun only to order out and capture the car thieves, and thus "the presence of the weapon until the moment it is fired is not enhancing. It is the basis of heroism." Of course, omitted from the court's analysis was the fact that Ross was armed because of his business as a cocaine dealer, not as a citizen resisting crime, and he was also a federal misdemeanor probationer at the time he committed the Hill homicide.

It may be, of course, that the cited remarks were not intended to be understood literally, but rather as exemplary of the legal question posed. The trial judge was well aware that applying section 654 here was at least debatable, as he invited the People's appeal which ensued.

## REMEDY

The People request we reverse and remand this matter to the trial court to impose the improperly stayed three-year prison term for the section 12022.5, subdivision (a) enhancement. ▆▆ But as the People also point out, " 'when the trial court pronounces a sentence which is unauthorized by the Penal Code that sentence must be vacated and a proper sentence imposed whenever the mistake is appropriately brought to the attention of the trial court or the reviewing court.' " (*People* v. *Eberhardt* (1986) 186 Cal.App.3d 1112, 1123 [231 Cal.Rptr. 387], quoting *People* v. *Benton* (1979) 100 Cal.App.3d 92, 102 [161 Cal.Rptr. 12]; see also *People* v. *Price* (1986) 184 Cal.App.3d 1405, 1412 [229 Cal.Rptr. 550].)

In these circumstances there is no need to remand for the exercise of any discretion, as none remains under the statutes here involved. Thus we instead order the superior court to file an amended abstract of judgment to reflect the imposition of the only sentence authorized by law, and we affirm the judgment as amended.

## DISPOSITION

The trial court is directed to prepare and forward to the appropriate authorities an amended abstract of judgment reflecting imposition of a three-year consecutive term for the section 12022.5 firearm use enhancement, and as modified the judgment is affirmed.

Benke, Acting P. J., and Miller, J.,* concurred.

Respondent's petition for review by the Supreme Court was denied January 18, 1995.

---

*Judge of the San Diego Superior Court sitting under assignment by the Chairperson of the Judicial Council.