[No. B106076. Second Dist., Div. Three. Dec. 17, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
CARTEZ RODNEY MYERS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II.B. and II.C.

## COUNSEL

Susan S. Bauguess, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Lance E. Winters and Suzann E. Papagoda, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

ALDRICH, J.—This case involves a drive-by shooting. Appellant and defendant Cartez Rodney Myers appeals from the judgment entered following a jury trial which resulted in his conviction of first degree murder and two counts of attempted murder. Appellant was sentenced to a prison term of 25 years to life, plus a consecutive life term, plus 12 years.

In the published portion of this opinion (pts. I., II.A., and III.) we address appellant's contention that Penal Code section 654 bars the imposition of the Penal Code section 12022.55 enhancement on the first degree murder conviction.

In the unpublished portion of this opinion (pts. II.B. and II.C.) we address appellant's contentions that (1) there was insufficient evidence to support the

two attempted murder convictions; and (2) there was insufficient evidence to support the jury's finding on the Penal Code section 12022.55 enhancement. We affirm.

I.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Facts.*

On September 8, 1995, appellant and Maurice Williams were on Wilmington Avenue in a black Chevrolet Beretta when "Greg" shot at them. Williams and appellant were members of the Palmer Block Crips. They believed Greg was a member of a rival gang, the Cedar Block Piru gang.

At approximately 6:30 p.m. that evening, appellant and Williams returned to the same neighborhood where the shooting had occurred. Williams drove the Beretta. Appellant, who was in the passenger seat, carried a loaded AK-47-type assault weapon.

At that time, Bernard Thomas had gone to visit his girlfriend, Bonija Fair, who lived at 634 Poplar Street, Compton. Accompanying Thomas was his friend, Garlon Robinson. Thomas and Robinson had driven in an Oldsmobile Cutlass to visit Fair. They parked the Cutlass on the south side of Poplar Street. Robinson stayed in the car, sitting in the front passenger seat. Thomas got out of the Cutlass and sat on the passenger side of its front hood. Fair saw Thomas and Robinson arrive; she walked toward them and stood near the Cutlass, facing Thomas. Fair stood about a foot away from Thomas.

Williams drove the Beretta by Thomas, Robinson and Fair. Appellant fired out of the passenger window four or five times towards Thomas, Robinson and Fair. Thomas was hit on his right side.[1] Fair was struck in the right side of her back; she subsequently died from the wounds she received. Robinson, who had been leaning down, turning dials on the radio, was unhurt.

Compton Police Officer Jose Velasco and his partner Officer Robert Labarge were in the area. They heard gunshots and saw the Beretta, speeding. The Beretta's driver's wing window was shattered. Appellant and another Black male were inside. As the Beretta raced away, it ran a stop sign, spun around and changed directions. Appellant threw an AK-47 style assault weapon out the passenger's window. The officers stopped, retrieved the weapon, and then continued to follow the Beretta.

---

[1]Thomas subsequently underwent surgery and was given 16 staples in his abdomen area.

Appellant and Williams exited the Beretta and ran. Williams was not located. With the assistance of a police helicopter, appellant was found under a van. Appellant resisted arrest; a number of officers forced appellant to the ground. Appellant continued to resist, kicking his feet and moving his arms. An officer hit appellant with a baton. Eventually, appellant was subdued and arrested.

While being escorted to the police car, appellant made a statement to Officer Velasco. Appellant admitted throwing the weapon out of the car, but stated he had not done the shooting. Appellant said that earlier in the evening, he and Maurice Williams had been involved in a confrontation with some Cedar Block Piru gang members.

At the police station, appellant spoke with Detective David Smith and other officers. After being read his rights, appellant gave a videotaped interview, which was played to the jury.[2] During this videotaped interview, appellant said the officers had not promised him anything for making the statement, nor had they threatened him. He also stated the following. The shooting was a payback. He was sitting in the passenger seat of the Beretta, which was being driven by Williams, when Greg shot at them, blowing out some windows. Williams left and then brought back to the Beretta an AK-47. He and Williams then went looking for Greg. He was in the passenger seat. They saw Greg, two other men and a girl and "we shot them." "[Greg] tried to take my life shooting at me." "They shot at us so we were going to shoot at them[.]"[3] As they raced away in the Beretta, appellant tossed the weapon out of the car. Appellant answered "Yep" in response to the question, "Who shot, you?" With his hand, appellant demonstrated how he pulled the trigger a number of times. Appellant identified Williams in a photographic lineup. Appellant also admitted he was a member of the Palmer Block Crips.

Gunshot residue tests were consistent with appellant having handled or discharged a firearm, or being in the environment of gunshot residue.

Robinson and Thomas were inactive members of the Piru gang.

B. *Defense.*

Appellant took the stand in his own defense. He denied shooting anyone and denied firing the gun.

---

[2]The record on appeal does not contain a transcript of the videotape. However, we obtained and reviewed the videotape, and the facts in this paragraph are taken from the tape.

[3]This is how the prosecutor described what appellant had said in the videotaped interview.

Appellant testified to the following. He was with Williams in a car on September 8, 1995. Appellant was in the front passenger seat. He had known Williams since junior high school. About 6:15 p.m. that evening, Greg approached on a bicycle; Greg fired three shots at the car. Later that same evening, he went with Williams for a ride. He thought they were going to get the window repaired. Both were smoking marijuana. Williams drove to Poplar Street. Appellant's seat was tilted back. Appellant saw Williams with a gun. Appellant was shocked, as he had not seen the gun before. Williams fired out the window, holding the weapon with both hands. They drove away. At Williams's direction, appellant threw the gun out the window. He ran from the car because he was afraid. He hid underneath the truck. Officers hit him, even though he had not resisted. He told the police he had thrown the gun out the window. At the police station, appellant felt threatened. He had given the videotape statement because officers had threatened to beat him again, if he did not say what they wanted. He was told to say he and Williams were shooting at a person named Greg. Everything he said on the videotape was a lie.

## C. *Procedure.*

Appellant was convicted of first degree murder. (Pen. Code, § 187, subd. (a).) It was also found to be true with regard to that conviction, that appellant intended to and did inflict great bodily injury and death as a result of discharging a firearm from a motor vehicle, pursuant to Penal Code section 12022.55. Appellant was also convicted on two counts of attempted murder (of Bernard Thomas and of Garlon Robinson, Pen. Code, §§ 664, 187, subd. (a)) and with regard to these convictions, it was found true that the crimes were willful, deliberate and premeditated. (Pen. Code, § 664, subd. (a).) Additionally, with regard to one of the attempted murder convictions (the attempted murder of Bernard Thomas) it was found true that appellant intended to inflict great bodily injury and death as a result of discharging a firearm from a motor vehicle, in violation of Penal Code section 12022.55 and he personally inflicted great bodily injury, in violation of Penal Code section 12022.7, subd. (a).

On the conviction of first degree murder (count I), appellant was sentenced to prison for 25 years to life, plus 6 years for the Penal Code section 12022.55 enhancement. On count II, the attempted murder of Bernard Thomas, appellant was sentenced to life with the possibility of parole, plus six years on the Penal Code section 12022.55 enhancement, to run consecutively to the sentence on the first degree murder conviction. The three-year great bodily injury enhancement (Pen. Code, § 12022.7) was stayed pursuant to Penal Code section 654. On count III, the attempted murder of Garlon

Robinson, appellant was sentenced to life with the possibility of parole, to run concurrently with the sentence on count I.

Appellant appeals from the judgment of conviction.

## II.

### DISCUSSION

A. *Penal Code section 654 does not bar the imposition of the Penal Code section 12022.55 enhancement on the murder conviction.*

██ Appellant contends the trial court was precluded from imposing the six-year term for the enhancement on the first degree murder conviction. He argues, "[b]ecause discharging a firearm from a motor vehicle with the specific intent to cause death was the crux of the murder of Bonija Fair and the enhancement imposed thereunder, the enhancement constituted an element of the underlying felony and, thus, its imposition was improper." We find this contention not persuasive.

Penal Code section 654 reads: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other."

██ "The purpose of section 654 is to prevent multiple punishment for a single act or omission, even though that act or omission violates more than one statute and thus constitutes more than one crime. Although the distinct crimes may be charged in separate counts and may result in multiple verdicts of guilt, the trial court may impose sentence for only one offense—the one carrying the highest punishment. [Citation.]" (*People* v. *Liu* (1996) 46 Cal.App.4th 1119, 1135 [54 Cal.Rptr.2d 578].) In this way, punishment is commensurate with a defendant's culpability. (*People* v. *Latimer* (1993) 5 Cal.4th 1203, 1211 [23 Cal.Rptr.2d 144, 858 P.2d 611].)

To date, our Supreme Court has not addressed the broad issue as to whether Penal Code section 654 applies to all enhancements. (*People* v. *Masbruch* (1996) 13 Cal.4th 1001, 1013 [55 Cal.Rptr.2d 760, 920 P.2d 705]; *People* v. *King* (1993) 5 Cal.4th 59, 78 [19 Cal.Rptr.2d 233, 851 P.2d 27]; *People* v. *Jones* (1993) 5 Cal.4th 1142, 1152 [22 Cal.Rptr.2d 753, 857 P.2d

1163].) Further, the Courts of Appeal are split on the issue.[4] (See cases listed in *People* v. *Coronado, supra,* 12 Cal.4th at p. 157; *People* v. *Flournoy* (1994) 26 Cal.App.4th 1695, 1698, fn. 2 [32 Cal.Rptr.2d 188]; *People* v. *Rodriguez* (1988) 206 Cal.App.3d 517, 519 [253 Cal.Rptr. 633]; *People* v. *Dobson* (1988) 205 Cal.App.3d 496, 501 [252 Cal.Rptr. 423]; see generally, 3 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Punishment for Crime, § 1384, pp. 1628-1630 & (1997 supp.) § 1384, pp. 73-77.)

Many of the cases refusing to apply section 654 to enhancements reason it is inapplicable because enhancements do not define an offense, but rather prescribe increased punishment in certain circumstances. (*People* v. *Warinner* (1988) 200 Cal.App.3d 1352, 1355 [247 Cal.Rptr. 197]; *People* v. *Parrish* (1985) 170 Cal.App.3d 336, 344 [217 Cal.Rptr. 700].) Nearly all cases which do apply Penal Code section 654 to enhancements have limited the number of enhancements applied to a single conviction, when there was a single act committed against a single victim. (*People* v. *Akins* (1997) 56 Cal.App.4th 331, 338 [65 Cal.Rptr.2d 338]; 3 Witkin & Epstein, Cal. Criminal Law, *supra,* Punishment for Crime, (1997 supp.) § 1384, p. 74.)

Here, our focus is narrowly drawn on an issue never before addressed. Can Penal Code section 654 be applied when an enhancement is imposed pursuant to Penal Code section 12022.55 for discharging a firearm from a motor vehicle, when the defendant is convicted of murder resulting from discharging the firearm from a motor vehicle?[5]

In *People* v. *Ross* (1994) 28 Cal.App.4th 1151 [33 Cal.Rptr.2d 894] the defendant raised an argument almost identical to the one before us, in dealing with a different enhancement, Penal Code section 12022.5, subdivision (a), personally using a firearm.

---

[4]The Supreme Court has addressed one aspect of the issue in *People* v. *Coronado* (1995) 12 Cal.4th 145 [48 Cal.Rptr.2d 77, 906 P.2d 1232]. *Coronado* dealt with an enhancement which went to the defendant's status as a repeat offender. (Pen. Code, § 667.5, subd. (b).) *Coronado* concluded Penal Code section 654 did not prohibit using a single prior felony conviction and resulting prison term to elevate a driving-under-the-influence charge under Vehicle Code section 23175, as well as to enhance the sentence under Penal Code section 667.5, subdivision (b). (*People* v. *Coronado, supra,* at pp. 156-159.)

[5]Appellant does not argue the enhancement was improperly imposed more than once. He only argues it should not have been imposed for the murder conviction. The defendants in *People* v. *Alvarez* (1992) 9 Cal.App.4th 121 [11 Cal.Rptr.2d 463] and in *People* v. *Williams* (1993) 14 Cal.App.4th 601 [17 Cal.Rptr.2d 583] were convicted on two counts of attempted murder and Penal Code section 12022.55 enhancements were imposed on each count. Both *Alvarez* and *Williams* concluded this was not error. In doing so, *Alvarez* and *Williams* held Penal Code section 654 did not preclude the imposition of both enhancements because there were multiple victims. They also held the single occasion rule of *In re Culbreth* (1976) 17 Cal.3d 330 [130 Cal.Rptr. 719, 551 P.2d 23] was not applicable. (*Culbreth* has subsequently been overruled in *People* v. *King, supra,* 5 Cal.4th 59.)

In *Ross,* the defendant's car was stolen, but the thief later returned to the same area where the car had been taken. The defendant saw the car and approached the thief; an argument ensued. The defendant withdrew a revolver and shot the thief. The defendant was convicted of voluntary manslaughter and it was found true the defendant had personally used a weapon, pursuant to Penal Code section 12022.5, subdivision (a). The trial court imposed, but pursuant to Penal Code section 654 stayed, the enhancement "because the gun use was also the act accomplishing the homicide." (*People* v. *Ross, supra,* 28 Cal.App.4th at pp. 1155-1156.) Thus, as appellant does in our case, the trial court in *Ross* focused on the "manner of committing this homicide in the particular, rather than in the abstract." (*Id.,* at p. 1156.)

*Ross* recognized the split of authority on the general issue as to whether Penal Code section 654 was applicable to enhancements. *Ross* narrowed the focus of its discussion to "whether section 654 may be applied to a firearms enhancement in a homicide which was committed by the use of a firearm." (*People* v. *Ross, supra,* 28 Cal.App.4th at p. 1155.)

*Ross* first examined Penal Code section 12022.5, subdivision (a) which stated that such enhancement shall be imposed "unless" the use of the firearm was an element of the offense. *Ross* concluded the use of a firearm was not an element of the offense of voluntary manslaughter, in the abstract. Thus, the imposition of the enhancement was not excluded by the statutory language. (*People* v. *Ross, supra,* 28 Cal.App.4th at p. 1156, approved by *People* v. *Hansen* (1994) 9 Cal.4th 300, 316-317 [36 Cal.Rptr.2d 609, 885 P.2d 1022].)

*Ross* noted that in the 1989 amendments to Penal Code section 1170.1, subdivision (h), the Legislature "specifically *deleted* [Penal Code] section 12022.5, subdivision (a) from the list of enhancements a court could strike." (*People* v. *Ross, supra,* 28 Cal.App.4th at p. 1157; Stats. 1989, ch. 1044, § 1, p. 3627.)

*Ross* then examined the entire statutory scheme, including Penal Code section 1170.1, subdivision (h). (28 Cal.App.4th at p. 1157.) "Application of section 654 to this case would clearly be inconsistent with section 1170.1, subdivision (h). To the extent section 654 could formerly have been interpreted to bar imposition of the enhancement under the facts of this case, it has been superseded by section 1170.1 as it has read since its 1989 amendment by Statutes 1989, chapter 1044. [¶] The purpose behind section 12022.5, subdivision (a) is to deter the use of firearms in the commission of

violent crimes by prescribing additional punishment for each use. [Citation.] The 1989 section 1170.1, subdivision (h) amendment demonstrates a further intent to combat the increasing use of firearms in the commission of felonies with a *mandatory* imposition of 12022.5, subdivision (a). [¶] . . . [¶] Application of section 654 to the facts at hand would severely hamper the efficacy of section 12022.5, subdivision (a) by preventing imposition of the enhancement in many instances of murder and manslaughter. . . . [¶] . . . [¶] The trial court here concluded the enhancement should be stayed under section 654 because 'it's the identical act as the crime itself.' However, [the defendant's] use of the firearm was not a crime in and of itself. The crime was the extinction of a human life, determined by the jury to be a voluntary manslaughter . . . . The gun was simply the method selected by [the defendant] to accomplish the crime, and the particular method selected subjects [the defendant] to an additional penalty. Because the underlying crime and the enhancement are not identical, there is and can be no double punishment under section 654. [¶] Finally, we must observe, . . . that the result reached here upholds legislative policy. [¶] '. . . The purpose of section 12022.5 is to discourage the use of firearms, and more fundamentally, to prevent people from being killed. [Citations] [¶] 'Had [the defendant] not brandished a *firearm,* the victim in this case might be alive. Imposition of an additional penalty for use of a firearm is consistent with the language and purpose of the statute, and is eminently reasonable.' (*People* v. *Read* [(1983)] 142 Cal.App.3d [ 900,] 906 [191 Cal.Rptr. 305]. . . .)" (*People* v. *Ross, supra,* 28 Cal.App.4th at pp. 1158-1159, original italics.)

■ The case before us deals with Penal Code section 12022.55. This statute provides for the enhancement of a sentence when the defendant personally inflicts great bodily injury or death by discharging a firearm from a motor vehicle. (*People* v. *Williams, supra,* 14 Cal.App.4th at pp. 604-605.) The statute deals with a treacherous and cowardly act. "It allows the perpetrator to take the victim by surprise and make a quick escape to avoid apprehension . . . ." (*People* v. *Bostick* (1996) 46 Cal.App.4th 287, 292 [53 Cal.Rptr.2d 760].) One of the Legislature's primary concerns in enacting this statute was to address the epidemic of drive-by shootings in which large numbers of persons are likely to be present. (*Id.,* at p. 293 (conc. opn. of Kline, P. J.).) It was to deter " '. . . persons from *violent actions upon our public streets* and highways . . . .' . . ." (*People* v. *Bostick, supra,* at p. 292, citation omitted.)

Unlike Penal Code section 12022.5, which focuses on a defendant's *use* of a firearm, Penal Code section 12022.55 focuses on the victim's *injuries.* It specifically "requires that the defendant intend to and actually inflict great

bodily injury on a victim." (*People* v. *Alvarez, supra,* 9 Cal.App.4th at p. 128.) Section 12022.55 enhancements may only be imposed upon the person who actually fires the weapon; it cannot be imposed on an aider and abettor. (*In re Jose D.* (1990) 219 Cal.App.3d 582 [268 Cal.Rptr. 364].)

 Penal Code section 12022.55 reads: "Notwithstanding Section 12022.5, any person who, with the intent to inflict great bodily injury or death, inflicts great bodily injury, as defined in Section 12022.7, or causes the death of a person, other than an occupant of a motor vehicle, as a result of discharging a firearm from a motor vehicle in the commission of a felony or attempted felony, shall, upon conviction of the felony or attempted felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished by an additional term of imprisonment in the state prison for 5, 6, or 10 years."

The reasoning of *Ross* applies equally to the case before us.

In 1989, when the Legislature amended Penal Code section 1170.1, subdivision (h) to delete Penal Code section 12022.5 from the list of enhancements a court could strike, it also deleted Penal Code section 12022.55 from the same list. (Stats. 1989, ch. 1044, § 1, p. 3627.) Thus, application of Penal Code section 654 to this case would be inconsistent with section 1170.1, subdivision (h).

Further, the purpose of Penal Code section 12022.55 is to deter persons from discharging firearms from a motor vehicle and thereby inflicting great bodily injury or death, the exact result which occurred here. To refrain from imposing the enhancement would contradict the exact terms of the statute, preventing the imposition of the enhancement in many instances of murder, manslaughter and attempted murder, the most vicious results of discharging a weapon from a motor vehicle. Imposing the enhancement fulfills the legislative purpose of punishing more severely those crimes which actually result in great bodily injury. (Cf. *People* v. *Parrish, supra,* 170 Cal.App.3d at pp. 343-344.) Under appellant's interpretation of Penal Code section 12022.55, where a victim dies from bullets fired from a vehicle, the person who pulls the trigger can never have the sentence enhanced, pursuant to Penal Code section 12022.55. This result would undermine the intent of the legislation, which was to punish such acts harshly. Had appellant not discharged a weapon, Fair would be alive.

The extinction of Fair's life was the crime. The use of the firearm was merely the method which achieved this crime. Thus, the underlying crime

and the enhancement are not identical and there was no double punishment under Penal Code section 654.

We also note that Penal Code section 189, murder, was amended in 1993, after the enactment of section 12022.55. The amendment to Penal Code section 189 added to the category of crimes which constitute first degree murder, those deaths which resulted from shootings from vehicles. (Pen. Code, § 189, amended Stats. 1993, ch. 611, § 4.5, eff. Sept. 30, 1993.) The Legislature did not, at that time, also amend Penal Code section 12022.55 to make it inapplicable to such crimes. One year later, the Governor signed legislation amending section 12022.55 to increase its penalty, yet the Legislature did not state it should not be applied to murders caused as a result of drive-by shootings. (Pen. Code, § 12022.55, amended Stats. 1993, 1st Ex. Sess., 1994 ch. 31, § 4, signed by Governor Sept. 21, 1994.) Had the Legislature desired to limit the application of Penal Code section 12022.55, it could have done so at that time.

Further, as noted above, had the Legislature intended to prohibit the imposition of the Penal Code section 12022.55 enhancement when it made shootings from vehicles resulting in death first degree murders, it would have done so when Penal Code section 189 was amended, or when it subsequently amended Penal Code section 12022.55.

Here, the jury was instructed with CALJIC No. 8.25.1 which stated that murder of the first degree included those murders "perpetrated by means of discharging a firearm from a motor vehicle intentionally at another person outside of the vehicle when the perpetrator specifically intended to inflict death . . . ." Based upon this instruction, appellant argues imposition of the Penal Code section 12022.55 enhancement was erroneous because discharging the weapon constituted an element of the underlying offense. This argument is not persuasive.

CALJIC No. 8.25.1 tracks a portion of Penal Code section 189, which establishes that certain types of murders are murders in the first degree. As specified in Penal Code section 189, murders perpetrated by "means of a destructive device or explosive, . . . lying in wait, torture, or by any other kind of willful, deliberate, and premeditated killing, . . . or any murder which is perpetrated by means of discharging a firearm from a motor vehicle, . . . is murder of the first degree." This section is a degree setting device. It does not delineate the elements of first degree murder, which are

contained in other statutes, as reflected in other instructions. (Pen. Code, §§ 187, 188.) Here, the jury was instructed as to the elements of murder as set forth in CALJIC Nos. 8.10 and 8.11.[6] The jury was also instructed that murders which are premeditated and deliberate are murders in the first degree. CALJIC No. 8.25.1 and its companion instruction, CALJIC No. 8.20, further defined the terms premeditation and deliberation, they did not add elements to the crime.[7]

The trial court did not err in imposing the Penal Code section 12022.55 enhancement on the first degree murder conviction in count one.[8]

---

[6]CALJIC No. 8.10 as given read:

"Defendant is accused in Count One of having committed the crime of murder, a violation of Penal Code Section 187.

"Every person who unlawfully kills a human being with malice aforethought is guilty of the crime of murder in violation of Section 187 of the Penal Code.

"In order to prove such a crime, each of the following elements must be proved:

"1. A human being was killed.

"2. the killing was unlawful, and

"3. The killing was done with malice aforethought.

"A killing is unlawful, if it is neither justifiable nor excusable."

CALJIC No. 8.11 as given read:

" 'Malice' may be either express or implied.

"Malice is express when there is manifested an intention unlawfully to kill a human being.

"Malice is implied when:

"1. The killing resulted from an intentional act,

"2. The natural consequences of the act are dangerous to human life, and

"3. The act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life.

"When it is shown that a killing resulted from the intentional doing of an act with express or implied malice, no other mental state need be shown to establish the mental state of malice aforethought.

"The mental state constituting malice aforethought does not necessarily require any ill will or hatred of the person killed.

"The word 'aforethought' does not imply deliberation or the lapse of considerable time. It only means that the required mental state must precede rather than follow the act."

[7]The pertinent parts of CALJIC No. 8.20, as given to the jury are as follows:

"All murder which is perpetrated by any kind of willful, deliberate and premeditated killing with express malice aforethought is murder of the first degree.

"The word 'willful,' as used in this instruction, means intentional.

"The word 'deliberate' means formed or arrived at or determined upon as a result of careful thought and weighing of consideration for and against the proposed course of action. The word 'premeditated' means considered beforehand.

"If you find that the killing was preceded and accompanied by a clear, deliberate intent on the part of the defendant to kill, which was the result of deliberation and premeditation, so that it must have been formed upon pre-existing reflection and not under a sudden heat of passion or other condition precluding the idea of deliberation, it is murder of the first degree."

[8]We also note that there is in this case an independent ground for imposing the section 12022.55 enhancement, i.e. that appellant in the commission of the murder used an assault weapon, an AK-47, as specified in section 12276. Penal Code section 12022.5, subdivision

B., C.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

III.

DISPOSITION

The judgment is affirmed.

Croskey, Acting P. J., and Aranda, J.,† concurred.t

Appellant's petition for review by the Supreme Court was denied March 25, 1998. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.

---

(b)(2), provides in relevant part: ". . . any person who personally uses an assault weapon . . . in the commission or attempted commission of a felony, shall, upon conviction of that felony or attempted felony, in addition and consecutive to the sentence prescribed for the felony or attempted felony, be punished by an additional term of imprisonment in the state prison for 5, 6, or 10 years."

*See footnote, *ante*, page 1523.

†Judge of the Municipal Court for the South Bay Judicial District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.