Filed 8/16/23  P. v. Martinez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>LUIS ALBERTO MARTINEZ,<br><br>Defendant and Appellant. | C096927<br><br>(Super. Ct. No. STKCRFE19980005787) |

In 1999, a jury found defendant Luis Alberto Martinez guilty of first degree murder for the shooting death of Vincent L.  In February 2019, following the enactment of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437), defendant petitioned the trial court for resentencing, contending that he was not the actual killer, did not aid and abet the actual killer, and was not a major participant who acted with reckless

1

indifference to human life.  (See Pen. Code, § 1172.6.)[1]  The trial court denied the petition at the prima facie stage.  We reversed and remanded with directions to the trial court to issue an order to show cause and hold a hearing to determine whether defendant is entitled to relief under section 1172.6.  (*People v. Martinez* (Oct. 7, 2021, C092940) [nonpub. opn.] (*Martinez II*).)  On remand, the trial court found beyond a reasonable doubt that defendant acted as an aider and abettor with intent to kill and denied the petition.  Defendant appeals, contending that the trial court's decision is not supported by substantial evidence.  Disagreeing, we affirm.

BACKGROUND

*A.   Facts*

We recite the facts as summarized in our opinion on defendant's direct appeal. (*People v. Martinez* (Oct. 16, 2000, C033598) [nonpub. opn.] (*Martinez I*).)

"Murder victim Vincent [L.] and attempted murder victim Armando [P.] were members of the East Side Stocktone gang.  On October 8, 1995, they were riding their bicycles in Stockton when a blue pickup truck began to follow them.  The truck's license plates had been removed, and a window had been taken out to facilitate the firing of a gun.  Five or six Hispanic males were in the truck, which had been stolen two days earlier.

"The truck came up beside the two cyclists.  [Armando P.] realized that he and [Vincent L.] were going to be shot at.  [Armando P.] shouted to [Vincent L.] to shoot at the truck.  The men in the truck fired one or two shotgun blasts, followed by pistol shots. One of the shotgun blasts killed [Vincent L.].  [Armando P.] was uninjured.

---

[1] Defendant filed his petition under Penal Code section 1170.95.  Effective June 30, 2022, the Legislature renumbered Penal Code section 1170.95 to section 1172.6 with no change in the text.  (Stats. 2022, ch. 58, § 10.)  We will refer to the statute by its current number.  Further undesignated statutory references are to the Penal Code.

"Defendant had been a member of the Vicky's Town street gang, a southern California gang, for 'two or three years' prior to December 1, 1997.  In 1997, while defendant was in county jail on an unrelated matter, police intercepted a letter he had written describing his participation in the October 1995 shootings.  When questioned, defendant first denied any involvement [in the murder] but then admitted that he was in the truck at the time of the shootings.  He said that the driver had picked him up, and they, along with two other passengers, were cruising.  The driver and a passenger were members of a southern California gang.  As they passed Waterloo Road, a bicyclist saw them and yelled out ESS, referring to the Eastside Stocktone gang, which was a northern California gang.  The driver yelled back, 'puro sur,' which means 'pure south, all south, all about south.'  The driver turned the truck around, and a passenger pulled out a shotgun from under the seat.  When the truck was alongside [Vincent L.], the passenger fired the shotgun at him.  When [Armando P.] fled, the driver took out a pistol and fired at him. The truck sped off, and the group abandoned it on the street.  Defendant admitted that the truck had ventured into northern-gang territory.

"A police gang expert testified that the shooting was done for the purposes of the southern California gangs in Stockton, which were involved in a long-standing feud with the northern gangs."  (*Martinez I*, *supra*, C033598.)

B.     *Procedural History*

A jury found defendant guilty of first degree murder (count 1), attempted willful, deliberate, premeditated murder (count 2), and street terrorism (count 3), and also found true that defendant committed counts 1 and 2 for the benefit of a criminal street gang. (*Martinez I*, *supra*, C033598.)  The jury found not true allegations in count 1 that defendant discharged a firearm from a motor vehicle causing great bodily injury and death (as well as allegations in counts 1 and 2 that defendant personally used a firearm). (*Martinez II*, *supra*, C092940.)  The trial court sentenced defendant to state prison for a

3

determinate term of three years, plus a consecutive indeterminate term of 25 years to life with possibility of parole. (*Martinez I*, *supra*, C033598.)

In February 2019, defendant filed a petition for resentencing under section 1172.6. (*Martinez II*, *supra*, C092940.) The trial court denied the petition, concluding that the evidence would support an argument that defendant was convicted as an aider and abettor. (*Martinez II*, *supra*, C092940.) Defendant appealed, contending that the trial court attempted prematurely to resolve disputed factual issues without an evidentiary hearing. (*Martinez II*, *supra*, C092940.) The People agreed, as did we. (*Ibid.*) We remanded the case with directions to the trial court to issue an order to show cause and hold an evidentiary hearing on defendant's petition. (*Martinez II*, *supra*, C092940.)

On remand, the trial court scheduled an evidentiary hearing. The People submitted a brief that included a discussion of the letter written by defendant intercepted while he was in jail. At trial, the letter had been introduced in evidence as written in Spanish and in an English translation by a certified Spanish interpreter. A detective testified that when he showed defendant the letter, defendant confirmed he wrote it. The English translation of the letter read:

"Well to start, we began as follows. In 1995 on Cherokee Street [around] 7:00 p.m., it was almost getting dark. In a white car that was supposedly stolen, me and my companions shot two, and one remained injured, but nobody ever knew anything about us. In 199? (not legible) at about 10:00 [p.m.] me and my companions, shot two and one died and one remained injured, but because we had a stolen truck, nothing was ever known, on Waterloo 3 streets from Cherokee.

"And a month and a half ago we shot ? somebody on Sico (not legible) passed charter way street, but he remained injured, but no one knew anything.

"These are things that appeared on the newspaper, and on these 3 things I have been the one that has had the weapon, if they want to shut me up, well I am willing to do anything especially kill. — Chaparro (Shorty)"

4

At trial, the detective testified that defendant confirmed his nickname was "Chaparro," Spanish for Shorty. Defendant said that most of the letter was not true, but the description of shooting from a stolen truck where one person was killed was partly true. The detective falsely told defendant that his fingerprints were found in the truck, to see if defendant would admit to being in the truck. Defendant admitted he was in the truck but said he was not there during the shooting. Later in the interview, defendant said he was in the truck and saw the murder. Defendant told the detective he had been picked up in the stolen truck. The driver was a man named Jose Juan, who was a member of the Playboy Sureño gang, a southern California gang, and had the letters "PBS" tattooed on his stomach. Defendant did not know the name of the man in the front passenger seat, but the man in the rear driver's seat was nicknamed "Perro," meaning dog, and also had PBS tattooed on his stomach. Defendant said Perro had a shotgun under the seat.

Defendant confirmed that they drove into an area defendant knew to be a Norteño gang area. Defendant related the details of the shooting to the detective. Defendant said they saw someone on a bike, who shouted "ESS," which stood for Eastside Stocktone, a Norteño gang. Jose Juan yelled back "puro sur." Jose Juan said they had to go back and drove around the corner. Perro pulled out the shotgun from beneath the seat. They drove alongside the person on the bike, and Perro shot him through the rear driver's side window. There was another person on a bike, as well. Jose Juan took out a pistol and began shooting at that person, who took off running. Defendant and the others drove off and abandoned the truck.

On cross-examination, the detective testified that defendant said the descriptions of shootings in the letter were not true and he made them up, except for the description of the shooting from the stolen pickup truck, which was partly true, i.e., he was in the truck but not the shooter. Defendant said he wrote the letter to gain influence with an older Hispanic man in jail by showing him how tough defendant was. The letter was a "resume" for defendant to get a job helping to sell drugs.

5

At trial, defendant also testified he wrote the letter because an individual he met in jail was going to get him a job selling drugs. Defendant testified he was not involved in the shootings but had made up the incidents or heard about them on the street, including the names of the driver and passengers, the guns used, and where the truck was dumped.

The prosecution's brief submitted in opposition to defendant's section 1172.6 petition argued that defendant could be convicted beyond a reasonable doubt under the recent amendments to sections 188 and 189, either as the actual killer or an aider or abettor with intent to kill. The prosecutor asserted that the letter disclosed not only defendant's participation in the crime but his intent to kill because of defendant's bragging about having the gun, not being afraid to kill, and referring to the people with him during crimes as his "companions." As to aiding and abetting, the prosecutor conceded that defendant was not the shooter but argued his statement in the letter that he " 'has had the gun' " indicated he handled the gun before the shooting, which bolstered the conclusion that he was an aider and abettor with intent to kill. Defendant did not submit a brief.

No additional evidence was presented at the evidentiary hearing on defendant's petition. The trial court stated twice that it had read the transcript of the trial.

Defense counsel argued that the flaw in the prosecution's argument was that the jury found defendant was not the shooter, therefore jurors must have convicted him under the now eliminated natural and probable consequences theory and the prosecution could not prove that they did not.

In ruling, the trial court stated that the issue was whether there "is enough evidence in the transcript . . . to find that defendant in this case, Mr. Martinez, aided and abetted with an intent to kill. Now, his letter clearly establishes that. I mean it was written, I assume in confidence. Law enforcement obtained it. He was quizzed a bit about it. His testimony has multiple versions here. We allowed that [testimony along] with this letter . . . for the record in the trial." The court continued: "So I think there's

6

sufficient evidence to hold that he's an aider and abettor and that he acted with the intent to kill based on all the evidence. Most startling [in terms of] weight and difficulty for him is the letter."

Based on the evidence presented at trial, the trial court found beyond a reasonable doubt that defendant acted as an aider and abettor with intent to kill.

DISCUSSION

Defendant contends there was insufficient evidence to support trial court's conclusion that defendant's letter established his guilt for aiding and abetting first degree murder, given the jury's finding that the firearm discharge and personal use allegations were not true. We disagree. The letter—coupled with defendant's admissions in the interview in which the detective showed him the letter—constituted sufficient evidence to support the trial court's decision to deny defendant's petition.

A.    *Legal Principles*

In Senate Bill 1437 (Stats. 2018, ch. 1015, § 2), effective January 1, 2019, the Legislature eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and narrowed the felony-murder exception to the malice requirement for murder. (§§ 188, subd. (a)(3), 189, subd. (e); *People v. Lewis* (2021) 11 Cal.5th 952, 957; see also *People v. Strong* (2022) 13 Cal.5th 698, 707-708; *People v. Gentile* (2020) 10 Cal.5th 830, 842-843.) Section 188, subdivision (a)(3) now prohibits imputing malice based solely on an individual's participation in a crime and requires proof of malice for a murder conviction, except under the revised felony-murder rule in section 189, subdivision (e). This provision requires proof that the defendant: (1) was the actual killer; (2) although not the actual killer, with the intent to kill assisted in the commission of the murder; or (3) was a major participant and acted with reckless indifference to human life. (§ 189, subd. (e)(1)-(3); see *Strong*, at p. 708; *Gentile*, at p. 842.)

However, the amendments to sections 188 and 189 did not eliminate direct aiding and abetting liability for murder. (*People v. Gentile*, *supra*, 10 Cal.5th at p. 848.) The elements of direct aiding and abetting are the following: " 'A "person aids and abets the commission of a crime when he or she, acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense; (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime." ' " (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1054 (*Nguyen*).) " 'Whether a person has aided and abetted in the commission of a crime ordinarily is a question of fact. . . . [¶] . . . [¶] Among the factors which may be considered in making the determination of aiding and abetting are: presence at the scene of the crime, companionship, and conduct before and after the offense.' [Citation.]" (*Nguyen*, at p. 1054; see also *People v. Garcia* (2008) 168 Cal.App.4th 261, 273 ["Factors to be considered by the trier of fact in determining 'whether one is an aider and abettor include presence at the scene of the crime, failure to take steps to attempt to prevent the commission of the crime, companionship, flight, and conduct before and after the crime' "].)

On appeal from an order denying a petition under section 1172.6 after an evidentiary hearing, we review the trial court's factual findings for substantial evidence. (*People v. Guiffreda* (2023) 87 Cal.App.5th 112, 125; *People v. Richardson* (2022) 79 Cal.App.5th 1085, 1090.) " '[O]ur job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt.' [Citation.] We will not reverse unless there is no hypothesis upon which sufficient substantial evidence exists to support the trial court's decision. [Citation.] We must 'presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citation.]" (*People v. Guiffreda*, *supra*, at p. 125; see also *Nguyen*, *supra*, 61 Cal.4th at pp. 1054-1055.)

" 'The same standard applies when the conviction rests primarily on circumstantial evidence.' [Citation.] 'An appellate court must accept logical inferences that the [trier of fact] might have drawn from circumstantial evidence.' [Citation.]" (*People v. Guiffreda*, *supra*, 87 Cal.App.5th at p. 125.) " 'Evidence of a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction.' [Citation.]" (*Nguyen*, *supra*, 61 Cal.4th at p. 1055.)

B.     Analysis

Here, there is sufficient evidence to support the trial court's denial of defendant's petition, based the court's finding that defendant acted as a direct aider and abettor in the first degree murder of Vincent L. Indeed, all the circumstances identified by the courts to determine whether a defendant is an aider and abettor militate in favor of the trial court's conclusion that defendant aided and abetted the murder of Vincent L., i.e., " 'presence at the scene of the crime, failure to take steps to attempt to prevent the commission of the crime, companionship, flight, and conduct before and after the crime' " (*People v. Garcia*, *supra*, 168 Cal.App.4th at p. 273.)

Presence at the scene: Defendant admitted he was present at the scene of the crime and did nothing to prevent the murder.[2] Although not sufficient alone to constitute aiding and abetting, defendant's presence in the truck is a circumstance that may be considered in passing on his guilt or innocence as an aider and abettor. (*Nguyen*, *supra*, 61 Cal.4th at p. 1055.)

Companionship: Defendant admitted he was a member of a Sureño gang riding in a stolen pickup truck with members of another Sureño gang driving into a Norteño gang

---

[2] The trial court's statements in ruling on the petition indicated it found credible defendant's letter and his description of the incident to the detective when shown the letter, as opposed to defendant's blanket recantation at trial. "If a court holds an evidentiary hearing, it may make credibility determinations, to which an appellate court would generally defer." (*Guardianship of Saul H.* (2022) 13 Cal.5th 827, 847.)

area.  Defendant in the letter expressly referred to the gang members with him as "my companions [who] shot two and one died and one remain uninjured . . . ."

Flight:  Defendant admitted that after the murder he and his confederates sped off, dropped off Jose Juan with friends in another vehicle, abandoned the stolen pickup in field, and waited at a gas station where Jose Juan picked them up.  Defendant's participation in these planned maneuvers to flee the scene and dispose of the murder vehicle is a further circumstance that the trial court could consider in determining whether defendant was an aider and abettor.  (*In re Lynette G.* (1976) 54 Cal.App.3d 1087, 1095; *People v. Glukhoy* (2022) 77 Cal.App.5th 576, 599.)  Indeed, defendant bragged in the letter that "because we had a stolen truck, nothing was ever known . . . ."

Conduct before the murder:  The letter and defendant's admissions are particularly damaging regarding his conduct before the murder.  To be sure, defendant's admission that he was a Sureño gang member in the company of other gang members is not sufficient to prove defendant was an aider and abettor to a crime.  (*Nguyen*, *supra*, 61 Cal.4th at p. 1055.)  However, the police expert testified that this drive-by shooting was done for the purposes of Sureño gangs in Stockton.  The police expert also testified that a drive-by shooting is a typical gang assault on a rival gang in which members have different roles:  "One fellow may provide the vehicle, another may come with weapons, another with ammunition .  . . ."  In the letter, defendant stated, "I have been the one that has had the weapon . . . ."  Moreover, the expert explained the individuals involved get together, check that the weapons are loaded, load the weapons in the vehicle, and go off looking for a target—a description that matches defendant's account of the murder.

Conduct after the murder:  In addition to his participation in the planned disposition of the stolen truck, defendant bragged about his role in the murder as a part of "resume" offered to show that he had committed and was willing to commit violent crimes.  In short, defendant claimed the murder.

10

Moreover, when interviewed by the detective, defendant repeatedly lied, evidencing consciousness of guilt. (See *People v. Jackson* (1996) 13 Cal.4th 1164, 1223; *People v. Kelly* (1992) 1 Cal.4th 495, 531.) First, he said he knew nothing about the murder and wasn't involved. Then, defendant changed his story and claimed he was dropped off before the murder. When shown the letter, defendant claimed he was in the truck and saw the shooting but did not commit the murder.

Thus, the evidence supported multiple circumstances that courts consider in determining aider and abettor liability.

Nonetheless, defendant contends that the trial court's order must be reversed, because a court considering only the evidence presented at trial could not make findings inconsistent with the jury's findings that defendant did not personally use a firearm (§ 12022.5, subd. (a)) or discharge a firearm from a vehicle (§ 12022.55). (See *People v. Cooper* (2022) 77 Cal.App.5th 393, 416-417; *People v. Henley* (2022) 85 Cal.App.5th 1003, 1017-1019.) However, the jury's negative findings on these enhancements do not preclude aiding and abetting liability. A defendant may be guilty of aiding and abetting a murder where the defendant did not personally use a firearm in the commission of the crime within the meaning of section 12022.5. (See *People v. Ahmed* (2011) 53 Cal.4th 156, 161, fn. 2; *People v. McCoy* (2001) 25 Cal.4th 1111, 1116-1118.) As for the enhancement for discharging a firearm from a vehicle, this enhancement may not be imposed upon an aider and abettor who did not personally discharge the firearm. (*People v. Myers* (1997) 59 Cal.App.4th 1523, 1533; *In re Jose D.* (1990) 219 Cal.App.3d 582, 588.) Thus, a negative finding on the section 12022.55 enhancement does not obviate aider and abettor liability but means only that the defendant did not fire the weapon. In sum, the jury's not true findings on these enhancements would be inconsistent with a theory that defendant was the shooter, but not with defendant's aider and abettor liability for the conduct he admitted both in the letter and in the interview with the detective.

Finally, defendant contends that, even if there was substantial evidence that defendant aided and abetted a murder with intent to kill, the evidence was insufficient to support the conclusion he was an aider and abettor to first degree murder. We disagree. " 'An aider and abettor who knowingly and intentionally assists a confederate to kill someone could be found to have acted willfully, deliberately, and with premeditation, having formed his own culpable intent. Such an aider and abettor, then, acts with the mens rea for first degree murder.' " (*In re Lopez* (2023) 14 Cal.5th 562; 579 *People v. Vasquez* (2016) 246 Cal.App.4th 1019, 1024.) Here, there was substantial evidence to support a finding that defendant aided and abetted first degree murder. Defendant stated in the letter that he "had the weapon" used in the shooting of Vincent L. Bringing a gun makes it " ' "reasonable to infer that he considered the possibility of homicide from the outset." ' " (*People v. Lee* (2011) 51 Cal.4th 620, 636.) Indeed, defendant claims in the letter that he brought the gun in multiple gang shootings, indicating defendant's intention that a shooting occur in these encounters. Further, the gang members in the truck entered into rival gang territory to find victims, which demonstrates planning. (See *People v. Wright* (1985) 39 Cal.3d 576, 593.) Evidence of defendant's consciousness of guilt, as previously discussed, also supports aiding and abetting liability for first degree murder. (*People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 296.) Lastly, defendant declared his intent to kill, stating in the letter that his participation in three shootings showed that he was "willing to do anything especially to kill." The trial court justifiably referred to this letter as "[m]ost startling" in its "weight and difficulty" for defendant.

In sum, numerous circumstances support defendant's liability for first degree murder.

## DISPOSITION

The order denying defendant's petition for resentencing under Penal Code section 1172.6 is affirmed.

                                    _____

                                    MESIWALA, J.

We concur:

_____

DUARTE, Acting P. J.

_____

BOULWARE EURIE, J.