[No. B235882. Second Dist., Div. Three. Mar. 14, 2013.]

THE PEOPLE, Plaintiff and Respondent, v.
TOMAS CALDERON, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts 1. and 3. of the Discussion.

## COUNSEL

James Koester, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Zee Rodriguez, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ALDRICH, J.**—Defendant and appellant Tomas Calderon appeals his convictions for carjacking, grand theft auto, and misdemeanor vandalism. The trial court sentenced Calderon to a term of six years in prison. In the published portion of this opinion, we conclude that Penal Code section 654[1] does not bar imposition of sentence on a section 12022, subdivision (b)(2) enhancement because section 12022, subdivision (b)(2) operates as an implied exception to section 654. Alternatively, we conclude that section 654 does not bar imposition of the enhancement because section 12022, subdivision (b)(2) punishes an aspect of Calderon's offense that is not always present in the crime of carjacking.

In the unpublished portion of the opinion, we consider and reject Calderon's contention that the trial court committed instructional error. We agree with

---

[1] All further undesignated statutory references are to the Penal Code.

Calderon that the abstract of judgment must be corrected to accurately reflect the jury's verdicts, and order the judgment modified accordingly. In all other respects, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Facts.*

#### a. *People's evidence.*

At approximately 11:00 o'clock· on the morning of August 29, 2010, Alexander Luna, accompanied by his friend William Seney, drove his roommate's red Honda Civic to a swap meet at a Los Angeles community college.[2] Luna parked the Honda on the top level of a parking structure, locked the vehicle's doors, and walked out to the swap meet.

Approximately 30 minutes later, Luna heard a car alarm that sounded like the Honda's. He joked to Seney that someone was stealing his car. He and Seney walked back to the parking structure, which was crowded with vehicles arriving and leaving. Luna was surprised to see Calderon driving the Honda down an exit ramp. Luna ran to the Honda, which was stopped due to traffic in the parking structure, and jumped on the vehicle's hood. Luna moved to the driver's side and managed to use his key to unlock the Honda's doors, but Calderon relocked them before Luna could get the door open. Calderon, who appeared frightened, attempted to drive away but his path was blocked by other vehicles. At Luna's direction, Seney threw a steering lock he had just purchased towards the Honda in an effort to break the window, but missed. Luna then punched the driver's side window in an attempt to get inside the car, breaking his wrist and fingers. Luna stood in front of the Honda to prevent Calderon from leaving, but kept moving back and forth to avoid being "run over" by Calderon. Twice, Calderon accelerated and drove at Luna. In the first instance, Calderon could have passed by Luna, but instead drove "directly towards" him. Luna was able to jump aside. In the second instance, it appeared to Luna that Calderon was not trying to hit him but was simply attempting to leave the structure. The Honda slightly hit Luna's knee before he was able to move out of the way. Calderon kept backing up abruptly and rapidly moving forward to get around the other cars.

Meanwhile Andrew Diaz, the head security officer for the swap meet, was alerted to the incident as it was in progress. Diaz heard tires screeching and saw the Honda driving the wrong way down a ramp. Diaz yelled to Calderon to stop. Diaz testified that Calderon "tried to run [him] over," but he moved

---

[2] Luna had permission to drive his roommate's Honda.

out of the way. By the time Calderon reached the exit, security personnel had begun lowering an aluminum "roll-up gate" to stop Calderon's escape. Calderon drove the Honda through the gate as it was coming down, causing the Honda's windshield to shatter and the gate to bend. Calderon then drove out of the parking lot and sped away.

A police officer observed Calderon speeding from the structure, was alerted to the situation by witnesses, and gave chase. After a brief pursuit, Calderon stopped the Honda and fled on foot. He was apprehended by officers shortly thereafter. A search of Calderon's person revealed a "shaved" vehicle key in his pocket.[3]

b. *Defense evidence.*

Calderon's former girlfriend, Iliana Matias, testified that Calderon was a mechanic and owned a Honda Civic, which he had rebuilt. On the morning of the incident, one of Calderon's friends, "Johnny," told him another friend, "Rembrer," had just purchased a car and needed help getting it to start. Calderon left with Johnny and did not return. Calderon knew that Rembrer was a car thief, but Rembrer also purchased and repaired cars.

2. *Procedure.*

Trial was by jury. Calderon was convicted of carjacking (§ 215, subd. (a)), grand theft auto (§ 487, subd. (d)(1)), and misdemeanor vandalism (§ 594, subd. (a)). The jury found Calderon personally used a deadly and dangerous weapon, the automobile, during commission of the carjacking. (§ 12022, subd. (b)(2).) It acquitted Calderon on count 2 (assault of Luna with a deadly weapon) and was unable to reach a verdict on count 3 (assault of Diaz with a deadly weapon), which was dismissed on the People's motion. The trial court sentenced Calderon to a term of six years in prison. It imposed a restitution fine, a suspended parole restitution fine, a court security assessment, and a criminal conviction assessment. Calderon appeals.

## DISCUSSION

1. *The trial court did not prejudicially err by failing to provide the jury with a definition of the term "force."*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

[3] A "shaved key" is a regular car key that has been filed down, making it usable to start and drive vehicles other than the one for which it was designed. It is commonly used as a burglary tool by car thieves.

[*] See footnote, *ante*, page 656.

2. *Section 654 does not mandate a stay of the section 12022 sentence enhancement for personal use of a deadly or dangerous weapon.*

The trial court sentenced Calderon to a term of five years on the base count, carjacking, and added to that a consecutive one-year sentence for the section 12022, subdivision (b)(2) enhancement for personal use of a deadly or dangerous weapon. Calderon contends that the one-year sentence on the enhancement should have been stayed pursuant to section 654. He argues his single act of driving at Luna with the stolen car established the "force or fear" element of the carjacking, and was also the basis for the sentence enhancement. Thus, he urges, he is being punished twice for a single act, committed with a single intent or objective.

Section 654, subdivision (a), provides in pertinent part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." It has long been held that section 654 bars multiple punishment for separate offenses arising out of a single occurrence where all of the offenses were incident to one objective. (*People v. McKinzie* (2012) 54 Cal.4th 1302, 1368 [144 Cal.Rptr.3d 427, 281 P.3d 412]; *People v. Latimer* (1993) 5 Cal.4th 1203, 1208 [23 Cal.Rptr.2d 144, 858 P.2d 611]; *People v. Jones* (2002) 103 Cal.App.4th 1139, 1143 [127 Cal.Rptr.2d 319].)[7] The appellate courts have been divided on the question of whether section 654 applies to enhancements related to the nature of the offense.[8] Until relatively recently, our Supreme Court had declined to decide the issue. (See *People v. Ahmed* (2011) 53 Cal.4th 156, 162 [133 Cal.Rptr.3d 856, 264 P.3d 822] (*Ahmed*); *People v. Wynn* (2010) 184 Cal.App.4th 1210, 1218–1219 & fn. 8 [109 Cal.Rptr.3d 457].)

In *Ahmed*, the court addressed whether and how section 654 applies to the imposition of *multiple enhancements* for a *single crime*.[9] There, the

---

[7] Our Supreme Court has expressed little enthusiasm for the traditional " 'intent and objective' " test, a judicial "gloss" of the statute, but has declined to repudiate it on stare decisis principles. (*People v. Correa* (2012) 54 Cal.4th 331, 341 [142 Cal.Rptr.3d 546, 278 P.3d 809]; *People v. Latimer, supra,* 5 Cal.4th at pp. 1205–1206, 1211–1212; *People v. Dydouangphan* (2012) 211 Cal.App.4th 772, 780 [149 Cal.Rptr.3d 893].)

[8] *People v. Coronado* (1995) 12 Cal.4th 145, 156–159 [48 Cal.Rptr.2d 77, 906 P.2d 1232], established that section 654 does not apply to enhancements based on the "nature of the offender," such as those based on a defendant's prior conviction or service of a prior prison term. (*Ahmed, supra,* 53 Cal.4th at p. 162.)

[9] *Ahmed* was the first in a series of recent California Supreme Court opinions addressing section 654. (See *People v. Mesa* (2012) 54 Cal.4th 191 [142 Cal.Rptr.3d 2, 277 P.3d 743] [discussed *post*]; *People v. Correa, supra,* 54 Cal.4th at p. 334 [§ 654 does not bar multiple punishment for multiple violations of the same statute]; *People v. Jones* (2012) 54 Cal.4th 350,

defendant shot his girlfriend in the stomach with a handgun. Based on this act, a jury convicted him of assault with a firearm and found true two enhancement allegations: personal use of a firearm (§ 12022.5, subd. (a)) and infliction of great bodily injury under circumstances involving domestic violence (§ 12022.7, subd. (e)). (*Ahmed, supra*, 53 Cal.4th at p. 160.) The appellate court stayed one of the enhancements on section 654 grounds, and the People appealed. Before the Supreme Court, the defendant argued that under section 654, sentence on only one of the enhancements could be imposed because both were based on the same act, shooting the victim in the stomach. (*Ahmed*, at p. 160.) *Ahmed* rejected this contention and set forth the proper framework for analyzing the application of section 654 to multiple enhancements. First, a court must look to the sentencing statutes at issue, which will often "supply the answer whether multiple enhancements can be imposed." (*Ahmed,* at p. 163.) If so, the court should "stop there." (*Id.* at p. 159.) "[R]ecourse to section 654 will be unnecessary because a specific statute prevails over a more general one relating to the same subject." (*Ahmed,* at p. 163.)

If the specific statutes do not provide the answer, section 654 comes into play. Enhancements based on a defendant's conduct during a crime fall within section 654's ambit in that they are " 'provisions of law' under which an 'act or omission' is 'punishable.' " (*Ahmed, supra*, 53 Cal.4th at p. 163.) However, "the analysis must be adjusted to account for the differing natures of substantive crimes and enhancements." (*Id.* at p. 160.) "[E]nhancements are different from substantive crimes, a difference that affects *how* section 654 applies to enhancements. Provisions describing substantive crimes . . . generally define criminal *acts*. But enhancement provisions do not define criminal acts; rather, they increase the punishment for those acts. They focus on *aspects* of the criminal act that are not always present and that warrant additional punishment. [Citations.]" (*Ahmed,* at p. 163.) Different enhancements may focus on different aspects[10] of the criminal act. In *Ahmed,* although the personal use of a firearm and great bodily injury enhancements arose from a single act (shooting the victim), they addressed two different aspects of that act (the resultant great bodily injury and the defendant's use of a firearm), each of which warranted additional punishment. (53 Cal.4th at pp. 163–164.) As particularly relevant here, *Ahmed* explained: "both the firearm use and the infliction of great bodily injury were part of the same

357 [142 Cal.Rptr.3d 561, 278 P.3d 821] [a single possession of a single firearm on a single occasion may be punished only once under § 654]; *People v. Sanders* (2012) 55 Cal.4th 731, 743 [149 Cal.Rptr.3d 26, 288 P.3d 83] [defendant could not be separately punished for violations of two different statutes based on simultaneous possession of the same firearm].)

[10] *Ahmed* explained its preference for the term " 'aspect' " in order to avoid confusion with "the special circumstances described in section 190.2, the aggravating factors described in section 190.3, or the term 'elements of the crime' commonly used to describe what must be proven to establish a crime." (*Ahmed, supra*, 53 Cal.4th at p. 163, fn. 3.)

physical act as the substantive crime itself. *If section 654 barred <u>any</u> additional punishment for a single criminal act, then no enhancement at all would be permitted, a result obviously inconsistent with the function of sentence enhancements.*" (*Id.* at p. 164, some italics added & underscoring added.) Thus, "when applied to multiple enhancements for a single crime, section 654 bars multiple punishment for the same *aspect* of a criminal act." (*Ibid.*)

Applying this framework, *Ahmed* determined that a specific sentencing statute, section 1170.1, resolved the issue and permitted imposition of both a section 12022.7 great bodily injury enhancement and a section 12022.5 firearm enhancement. (*Ahmed, supra,* 53 Cal.4th at pp. 165, 168.) Subdivisions (f) and (g) of section 1170.1 expressly state that only one enhancement could be imposed for being armed with a firearm, and only one enhancement could be imposed for inflicting great bodily injury, but imposition of each such enhancement should " 'not limit the imposition of any other' " applicable enhancements. (*Ahmed,* at pp. 164–165.) Together, the subdivisions barred imposition of two or more weapons enhancements for the same offense, and two or more great bodily injury enhancements for the same offense, but permitted imposition of one weapons and one great bodily injury enhancement. (*Id.* at p. 165.) Furthermore, even assuming the statutory language was ambiguous, an examination of section 1170.1's history demonstrated the Legislature's intent to permit imposition of both one weapons enhancement and one great-bodily-injury enhancement for all crimes. (*Ahmed,* at pp. 165–168.) The court did not further consider application of section 654. (*Ahmed,* at p. 168.)

The instant case does not involve multiple enhancements; instead, here, a single act provided the basis for a single deadly weapon enhancement and established an element of the underlying, substantive offense. In *Ahmed,* of course, the same was true: a single act—shooting the victim in the stomach—established the elements of the underlying offense and was the basis for the enhancements. *Ahmed*'s conclusion that both a great bodily injury and a firearm enhancement were permissible would appear to make little sense if section 654 applied to bar an enhancement under these circumstances. However, *Ahmed* did not expressly consider whether, or how, section 654 applied vis-à-vis the substantive crime and the enhancements. Other courts, including this one, have previously addressed the issue. (See, e.g., *People v. Wynn, supra,* 184 Cal.App.4th 1210; *People v. Chaffer* (2003) 111 Cal.App.4th 1037 [4 Cal.Rptr.3d 441]; *People v. Myers* (1997) 59 Cal.App.4th 1523 [69 Cal.Rptr.2d 889]; *People v. Ross* (1994) 28 Cal.App.4th 1151 [33 Cal.Rptr.2d 894].)

Applying the *Ahmed* framework here, we must begin by examining the relevant statute. Section 12022, subdivision (b)(1), provides that a defendant

"shall be punished by an additional and consecutive term of imprisonment" when he or she personally uses a deadly or dangerous weapon in the commission or attempted commission of a felony, unless "use of a deadly or dangerous weapon is an element of that offense." Subdivision (b)(2) provides that if the defendant "has been convicted of carjacking or attempted carjacking," the additional term shall be for one, two, or three years.[11] The express language of section 12022, subdivision (b) neither expressly exempts it from, nor makes it subject to, section 654's reach. (Cf. *People v. Palacios* (2007) 41 Cal.4th 720, 727–729 [62 Cal.Rptr.3d 145, 161 P.3d 519] [express language that § 12022.53 applied " '[n]otwithstanding any other provision of law' " demonstrated a legislative intent to "create a sentencing scheme unfettered by section 654"].)

Although decided long before *Ahmed*, *People v. Chaffer, supra*, 111 Cal.App.4th 1037, is instructive. In *Chaffer* the defendant was convicted of inflicting corporal injury upon a cohabitant. The jury also found true a section 12022.7 enhancement based on the defendant's infliction of great bodily injury on the victim, arising out of the same conduct. As here, the defendant contended section 654 precluded imposition of sentence on the enhancement, because his single act of causing the victim serious bodily injury was the basis for both his conviction on the underlying crime and the enhancement. (*Chaffer*, at p. 1044.) *Chaffer* rejected this contention, reasoning that section 12022.7 was a "specific provision that operates as an exception to the more general statute, section 654." (*Chaffer*, at pp. 1044–1045.) "Section 12022.7 is a narrowly crafted statute intended to apply to a specific category of conduct. It represents 'a legislative attempt to punish more severely those crimes that actually result in great bodily injury.' [Citations.]" (*Chaffer*, at p. 1045.) Therefore, section 12022.7 controlled and operated as an implied exception to section 654. (*Chaffer*, at p. 1046.)

■ *Chaffer*'s reasoning appears consistent with *Ahmed*'s analysis. (*Ahmed*, *supra*, 53 Cal.4th at p. 163 ["a specific statute prevails over a more general one relating to the same subject"].) Section 12022, subdivision (b)(2), the statute at issue here, like section 12022.7, is designed to punish a specific category of conduct, use of a deadly or dangerous weapon during a carjacking. Carjacking requires the use of force or fear, but does not require use of a dangerous or deadly weapon. (§ 215, subd. (a); CALCRIM No. 1650; *People v. Magallanes* (2009) 173 Cal.App.4th 529, 534 [92 Cal.Rptr.3d 751] [no express threat is necessary to establish a carjacking victim's fear]; *In re*

---

[11] Section 12022 provides, in pertinent part: "(b)(1) Any person who personally uses a deadly or dangerous weapon in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment . . . in the state prison for one year, unless use of a deadly or dangerous weapon is an element of that offense.

"(2) If the person described in paragraph (1) has been convicted of carjacking or attempted carjacking, the additional term shall be in the state prison for one, two, or three years."

*Michael L.* (1985) 39 Cal.3d 81, 88 [216 Cal.Rptr. 140, 702 P.2d 222] [the "particular means by which force is employed or fear imparted is not an element of robbery"]; *People v. Garcia* (1995) 32 Cal.App.4th 1756, 1776–1777 [39 Cal.Rptr.2d 73]; *In re Anthony H.* (1980) 108 Cal.App.3d 494, 499 [166 Cal.Rptr. 607].) Use of a deadly or dangerous weapon makes carjackings more lethal than they would otherwise be. Section 12022, subdivision (b), like the statute at issue in *Chaffer*, is a narrowly crafted statute intended to apply to a specific category of conduct, and represents a legislative attempt to punish more severely those carjackings in which a deadly or dangerous weapon is used. It therefore operates as an implied exception to the more general statute, section 654. (See *People v. Chaffer, supra*, 111 Cal.App.4th at pp. 1044–1045.)

The legislative history of section 12022, subdivision (b)(2) reinforces this conclusion. The Legislature created the crime of carjacking in 1993. (Stats. 1993, ch. 611, § 6, p. 3508; *People v. Lopez* (2003) 31 Cal.4th 1051, 1057 [6 Cal.Rptr.3d 432, 79 P.3d 548].) At the same time, the Legislature amended section 12022 to provide for an enhancement of up to three years for the use of a deadly or dangerous weapon in the commission of a carjacking, as opposed to the one-year term generally applicable to other felonies under the statute. (Stats. 1993, ch. 611, § 30, pp. 3578–3579.) In order to combat a potentially violent and increasingly common crime, the ". . . Legislature sought to impose a severe penalty . . . ." (*People v. Coleman* (2007) 146 Cal.App.4th 1363, 1369 [53 Cal.Rptr.3d 505]; see *Lopez*, at p. 1057.) This legislative intent would be frustrated if section 654 barred imposition of the enhancement under the circumstances presented here.

Even if the foregoing considerations are insufficient to establish that section 12022, subdivision (b)(2) operates as an implied exception to section 654, section 654 would not preclude imposition of sentence on the enhancement in the instant matter. *Ahmed* explained that enhancements do not define criminal acts, but instead apply when the Legislature has determined certain *aspects* of the criminal act merit increased punishment. (*Ahmed, supra*, 53 Cal.4th at pp. 163–164; *People v. Dydouangphan, supra*, 211 Cal.App.4th at p. 784.) Here, the carjacking statute punishes the conduct of taking a car from the possessor's presence by means of force or fear. Section 12022 punishes a different aspect of the crime Calderon committed: his use of a deadly or dangerous weapon, which was a more extreme manifestation of the use of force or fear than that necessary to commit carjacking. Thus, use of the Honda as a deadly or dangerous weapon was an aspect of Calderon's crime that is not always present in the crime of carjacking, and warrants additional punishment. (*Ahmed*, at p. 163.)

Our decision in *People v. Myers, supra*, 59 Cal.App.4th 1523, illustrates this point. In *Myers*, the defendant committed a driveby shooting, killing one

victim, and was convicted of first degree murder. The jury also found true a great bodily injury enhancement pursuant to section 12022.55, based on the same shooting. (*Myers*, at p. 1528.) Myers argued that because the discharge of the gun from a motor vehicle, with the specific intent to cause death, was the crux of both the murder and the enhancement, section 654 precluded punishment on the enhancement. (*Myers*, at p. 1529.) In rejecting this contention, we explained that the legislative history and the purpose of the statute supported the conclusion section 654 did not apply. Additionally, we reasoned: "The extinction of [the victim's] life was the crime. The use of the firearm was merely the method which achieved this crime. Thus, the underlying crime and the enhancement are not identical and there was no double punishment . . . ." (*Myers*, at pp. 1533–1534.) In other words, using *Ahmed*'s parlance, the substantive offense punished one aspect of the crime: the killing. The enhancement punished a different aspect: the method used, that is, a driveby shooting, a method about which the Legislature had expressed particular concern. (*Id.* at p. 1532.) The same is true here.

*People v. Wynn, supra*, 184 Cal.App.4th 1210, cited by Calderon, suggests a contrary result. In *Wynn*, the defendant stole cigarettes from a store and used a nunchaku against store security personnel who confronted him in the parking lot. He was convicted of burglary, petty thefts with a prior, assaults with a deadly weapon, and possession of a prohibited deadly weapon. The jury also made a true finding that Wynn personally used a deadly and dangerous weapon, the nunchaku, in commission of the burglary and petty theft counts. (*Id.* at p. 1214.) The trial court imposed a one-year enhancement on the burglary count under section 12022, subdivision (b)(1) for his use of the nunchaku. Wynn argued the enhancement should be stayed because it was based on the same conduct that underpinned the assault with a deadly weapons counts. (*Wynn*, at p. 1218.) *Wynn* was decided prior to the Supreme Court's decision in *Ahmed*, and the appellate court began its analysis by determining that section 654 applied to the section 12022, subdivision (b)(1) enhancement. (*Wynn*, at pp. 1220–1221.) The People conceded that if section 654 applied, sentence on the enhancement should have been stayed. (*Wynn*, at p. 1221.) *Wynn* agreed, reasoning that the enhancement was "based on an *act or omission* performed by Wynn during the offense, namely, using the nunchaku." (*Id.* at p. 1220.) Because the "weapons enhancement was based on the same indivisible course of conduct as the assault with a deadly weapon counts," section 654 precluded punishment on the section 12022, subdivision (b)(1) enhancement. (*Wynn*, at p. 1221.)

*Wynn*'s analysis is not tenable in light of *Ahmed.*[12] *Wynn* focused on whether the same "act or omission" was the basis for both the enhancement and the substantive offense. (*People v. Wynn, supra,* 184 Cal.App.4th at p. 1220 [because the enhancement was "based on an *act or omission* performed by Wynn during the offense," the enhancement fell within § 654's scope].) But *Ahmed* teaches that because enhancements are different from substantive crimes, section 654 bars multiple punishment only for the same aspect of the criminal act. (*Ahmed, supra,* 53 Cal.4th at p. 164.)

▇ Moreover, as has been recognized by both *Ahmed* and other courts, if section 654 precluded any additional punishment for a single criminal act, then no enhancements would be permitted, a result that is clearly inconsistent with the Legislature's intent. (*Ahmed, supra,* 53 Cal.4th at p. 164; *People v. Dydouangphan, supra,* 211 Cal.App.4th at p. 785 ["literal application of section 654 would result in a bar to imposition of any sentence enhancement . . ."]; *People v. Chaffer, supra,* 111 Cal.App.4th at p. 1045 ["If we were to apply the general provisions of section 654 to the more specific GBI enhancement, it would nullify section 12022.7, because the enhancement and underlying offense *always* involve the same act. This cannot be what the Legislature intended . . . ."]; *People v. Myers, supra,* 59 Cal.App.4th at p. 1533; *People v. Ross, supra,* 28 Cal.App.4th at p. 1158.) Unlike in the case of *multiple enhancements* based on a single act, applying section 654 to an enhancement like section 12022, subdivision (b)(2) because some, or all, of the acts supporting the enhancement also established an element of the crime would effectively eliminate enhancements in most cases and hamper the Legislature's ability to increase punishment when a crime is committed under particularly egregious circumstances.[13] A defendant who committed a carjacking by means of mere threats would be punished identically to a

---

[12] *Ahmed* cited *Wynn,* as well as *Chaffer,* in a string citation illustrating the proposition that the "modern trend" has been for courts to hold or assume that section 654 does apply to conduct-based enhancements. (*Ahmed, supra,* 53 Cal.4th at p. 162.) We do not understand the citation to amount to approval of *Wynn*'s analysis on the question of whether section 654 applied on the facts presented there. *Wynn* did not consider *Chaffer* or *Myers,* and did not address the question of whether section 12022, subdivision (b) operates as an exception to section 654.

[13] Calderon attempts to sidestep this issue by attaching significance to the fact that the automobile was both the subject of the carjacking and the "instrumentality of force." He argues: "Had appellant used some weapon other than the automobile itself as an instrument to satisfy the force or fear element of the carjacking, such as displaying a gun or a knife, the use of those weapons would not have been an element of the underlying car theft offense that became aggravated to the carjacking by the defendant's use of the object of the theft as [a] deadly or dangerous weapon" and section 654 would not have applied. We fail to grasp the logic of this argument. As we understand it, Calderon's complaint is that the same act—driving the car at Luna—is here being used both to establish an element of the offense and as the basis for the enhancement. That would be equally true regardless of what deadly weapon he chose to use to apply force or fear. We do not discern any special significance to the fact that the Honda was both the subject of the carjacking and the means of applying force or instilling fear.

defendant who held a loaded and cocked gun to the victim's head. Obviously that result is not what the Legislature intended. "An interpretation that renders statutory language a nullity is obviously to be avoided." (*Williams v. Superior Court* (1993) 5 Cal.4th 337, 357 [19 Cal.Rptr.2d 882, 852 P.2d 377]; see *People v. Smith* (2013) 212 Cal.App.4th 1394, 1403–1404 [152 Cal.Rptr.3d 142].)

Applying the rule suggested by Calderon would also give rise to significant analytical problems. Would section 654 apply only if the act in question was, by itself, sufficient to establish an element? Or would section 654 also apply if the act was one of several pieces of evidence establishing an element, or if it simply provided some evidence supporting the People's case? How would a court determine which "acts" the jury relied upon in rendering its verdict? In short, application of section 654 in the fashion Calderon suggests is unworkable.

Calderon relies on *People v. Mesa* (2012) 54 Cal.4th 191 [142 Cal.Rptr.3d 2, 277 P.3d 743], in support of his contention that the section 12022 enhancement must be stayed pursuant to section 654. *Mesa* held that section 654 precludes punishment for the substantive offense of active participation in a criminal street gang and an underlying felony used to satisfy the gang-participation element. (*Mesa*, at pp. 197–198.) In *Mesa*, the defendant, a felon and gang member, shot two victims in two separate incidents. As to each shooting, he was convicted of and punished for three offenses: assault with a firearm, possession of a firearm by a felon, and the substantive offense of active participation in a criminal street gang (the "gang crime[]"). (*Id.* at p. 195.) The gang crime had three elements, one of which was that the defendant willfully promoted, furthered, or assisted in felonious criminal conduct by members of the gang. (*Id.* at p. 197.) The only evidence demonstrating this element was that, in each incident, Mesa had committed the charged offenses of assault with a firearm or possession of a firearm by a felon. (*Ibid.*) *Mesa* held that punishing the defendant for the first two offenses precluded additional punishment for the gang crime. (*Id.* at p. 193.) *Mesa* reasoned: "For each shooting incident, defendant's sentence for the gang crime violates section 654 because it punishes defendant a second time either for the assault with a firearm or for possession of a firearm by a felon." (*Mesa*, at p. 197.) The underlying felonies of assault and possession " 'were the act[s] that transformed mere gang membership—which, by itself, is not a crime—into the crime of gang participation.' [Citation.]" (*Ibid.*) *Mesa* explained: "Section 654 applies where the 'defendant stands convicted of both (1) a crime that requires, as one of its elements, the intentional commission of

an underlying offense, and (2) the underlying offense itself.' [Citation.]" (*Mesa*, at p. 198.)

Calderon attempts to analogize the instant matter to *Mesa*, by characterizing his use of the Honda as the "force or fear element that . . . aggravated the simple car theft to carjacking" and also served as the basis for the section 12022 enhancement. This analysis is specious. Unlike in *Mesa*, the crime of carjacking does not require, as an element, the commission of an underlying *offense*. While Calderon's act of driving the car at Luna established an element of the carjacking and was the basis for the enhancement, the use of the car was not an "underlying offense" as in *Mesa*. Moreover, as Calderon appropriately acknowledges, the issue in *Mesa* was whether the defendant could be separately punished for three *different offenses*, whereas here the question is whether he can be separately punished for *an offense and an enhancement*. This is a crucial difference. Calderon's argument that "for analytic purposes, there should be little or no . . . difference when applying Section 654 to enhancements" flies in the face of *Ahmed*. As we have explained, *Ahmed* expressly held that "enhancements are different from substantive crimes, a difference that affects *how* section 654 applies to enhancements." (*Ahmed, supra*, 53 Cal.4th at p. 163.)

■ Finally, the conclusion that section 654 does not bar sentence on the enhancement in the instant case comports with the oft-stated principle that the purpose of section 654 is to ensure that a defendant's punishment will be commensurate with his or her culpability. (*People v. Correa, supra*, 54 Cal.4th at p. 341; *People v. Oates* (2004) 32 Cal.4th 1048, 1063 [12 Cal.Rptr.3d 325, 88 P.3d 56]; *People v. Latimer, supra*, 5 Cal.4th at p. 1211; *People v. Jones, supra*, 103 Cal.App.4th at p. 1148.) A person who commits a carjacking with a deadly or dangerous weapon presents a greater danger to the victim and the public, and is therefore more culpable, than a perpetrator who commits the same crime using less lethal means.

■ In sum, we hold that section 12022, subdivision (b)(2) operates as an implied exception to section 654. Section 654 would not preclude imposition of the deadly or dangerous weapon enhancement in any event because section 12022, subdivision (b)(2) punishes an aspect of the crime of carjacking that is not always present in the offense.

3. *Correction of the abstract of judgment.*\*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

\*See footnote, *ante*, page 656.

## DISPOSITION

The clerk of the superior court is directed to modify the abstract of judgment to reflect that Calderon was convicted in count 4 of grand theft (Pen. Code, § 487), and to forward the modified abstract of judgment to the Department of Corrections and Rehabilitation. The judgment is otherwise affirmed.

Klein, P. J., and Kitching, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 19, 2013, S209691.