Filed 6/24/15  P. v. Pleitez CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>EDIN PLEITEZ,<br><br>    Defendant and Appellant. | B255949<br><br>(Los Angeles County<br>Super. Ct. No. PA076186) |

APPEAL from a judgment of the Superior Court of Los Angeles County, David B. Gelfound, Judge.  Affirmed in part, vacated in part, and remanded for further proceedings.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II and Robert C. Schneider, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Edin Pleitez appeals from the judgment entered following a jury trial that resulted in his convictions for spousal rape, inflicting corporal injury on a spouse, and spousal battery.  The trial court sentenced Pleitez to a term of 11 years six months in prison.  Pleitez contends the trial court erred by imposing full consecutive sentences on all counts, and by imposing a sex offender registration requirement.  Pleitez's first contention has merit, and we vacate his sentence and remand for resentencing.  In all other respects, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts*[1]

Pleitez and his wife, B., had been in a relationship for approximately 15 years, were married for almost five years, and had three children together.  Their relationship was not harmonious, and they informally separated on several occasions.  Between early May and late December 2012, the couple's relationship was tumultuous.  Pleitez moved out of the couple's apartment on April 26, 2012.

As relevant here, B. testified as follows.  On May 8, 2012, Pleitez's brother Omar,[2] with whom B. worked, called and asked to stay at her apartment because he had been having problems with his family.  She agreed.  Omar slept in the children's bedroom, on B.'s youngest son's bed, and the son slept with B.  Around midnight, B. heard the front door open and found Pleitez downstairs with his luggage.  He informed her that he was paying the rent and was going to stay in the apartment.  When Pleitez found Omar sleeping in the children's room he became angry and pushed Omar down the stairs and out of the house.  He yelled at B. and said they would talk once his brother was gone.  Once Omar left, Pleitez grabbed B.'s arm, pushed her, and threw her on the bed.  He tore her clothing off, leaving her naked.  He hit her in the face with a closed fist, and

---

[1]     Although the information charged Pleitez with 15 counts, he was convicted on only three.  We do not discuss the evidence relevant to the counts on which he was acquitted.

[2]     For ease of reference, we refer to Omar by his first name.

2

threw her against the wall against which the bed was placed. He then touched her breast and kissed her. She pushed him away and struggled with him on the bed. He climbed on top of her, pulled her hair, and kissed her. She pushed him away and said, "No." He grabbed her hands and held them over her head. He unzipped his pants and engaged in vaginal intercourse with her. When he had completed the attack, he asked why she had resisted, and went to sleep on the living room sofa. As a result of the attack, B. suffered bruises on her legs, knee, face, and neck.

As of December 13, 2012, Pleitez and B. were living apart; the children lived with B. That evening, B. was shaving her legs in the bathtub. Pleitez arrived at the house and entered the bathroom. He placed his forearm around her neck and pulled her from the tub, naked. He placed his fingers in her vagina and accused her of cheating on him with his brother-in-law Carlos. He kissed her and choked her. They discussed his allegations that she was cheating. He asked why she refused to reconcile with him. When she said she never would, he punched her in the stomach, dragged her to the living room, and pushed her, causing her to fall. He broke her cellular telephone and told her he would no longer pay the rent.

2. *Procedure*

Pleitez was charged in a 15-count amended information with various offenses against B. and their daughter, G. A jury convicted Pleitez of felony spousal rape occurring between May 2, 2012 and May 31, 2012 (Pen. Code, § 262, subd. (a)(1), count 17);[3] inflicting corporal injury upon a spouse occurring between May 2, 2012 and May 31, 2012 (§ 273.5, subd. (a), count 31); and misdemeanor battery of B. occurring on December 13, 2012 (§ 243, subd. (e)(1), count 27), a lesser included offense of the crime of inflicting corporal injury upon a spouse. The jury acquitted Pleitez of the remaining 12 counts. The trial court denied Pleitez's new trial motion and sentenced him to a prison term of 11 years six months. It ordered Pleitez to pay victim restitution and imposed a

---

[3]     All further undesignated statutory references are to the Penal Code.

restitution fine, a suspended parole restitution fine, a court operations assessment, and a criminal conviction assessment.  Pleitez appeals.

DISCUSSION

1. *Sentencing error*

The trial court sentenced Pleitez as follows.  It selected count 17, spousal rape, as the principal term and imposed the high term of eight years.  It then imposed a consecutive, full midterm of three years for count 31, inflicting corporal injury on a spouse, and a consecutive full term of six months for count 27, misdemeanor spousal battery.  The court indicated it was exercising its discretion to sentence Pleitez pursuant to section 667.6, subdivision (c).  Pleitez contends his sentence must be reduced because the trial court improperly sentenced him to consecutive sentences on the nonsex offenses.  The People agree that the court erred, but contend the matter must be remanded for resentencing.  We agree with the People.

Section 1170.1[4] sets forth the general sentencing scheme for multiple convictions. (*People v. Belmontes* (1983) 34 Cal.3d 335, 343.)  "Under the [Determinate Sentencing Act], if a defendant is convicted of more than one offense carrying a determinate term, and the trial court imposes consecutive sentences, the term with the longest sentence is the 'principal term'; any term consecutive to the principal term is a 'subordinate term.'

---

[4]    Section 1170.1, subdivision (a), provides in pertinent part: "Except as otherwise provided by law, and subject to Section 654, when any person is convicted of two or more felonies, whether in the same proceeding or court or in different proceedings or courts, and whether by judgment rendered by the same or by a different court, and a consecutive term of imprisonment is imposed under Sections 669 and 1170, the aggregate term of imprisonment for all these convictions shall be the sum of the principal term, the subordinate term, and any additional term imposed for applicable enhancements for prior convictions, prior prison terms, and Section 12022.1.  The principal term shall consist of the greatest term of imprisonment imposed by the court for any of the crimes, including any term imposed for applicable specific enhancements.  The subordinate term for each consecutive offense shall consist of one-third of the middle term of imprisonment prescribed for each other felony conviction for which a consecutive term of imprisonment is imposed, and shall include one-third of the term imposed for any specific enhancements applicable to those subordinate offenses."

4

(§ 1170.1, subd. (a).) The court imposes the full term, either lower, middle, or upper, for the principal term. However, in general (there are exceptions), the court imposes only 'one-third of the middle term' for subordinate terms. [Citation.]" (*People v. Felix* (2000) 22 Cal.4th 651, 655.)

Section 667.6 provides for an alternative, more severe sentencing scheme when the defendant has been convicted of certain sex crimes. Subdivision (c) of that statute provides: "In lieu of the term provided in Section 1170.1, a full, separate, and consecutive term may be imposed for each violation of an offense specified in subdivision (e) if the crimes involve the same victim on the same occasion. A term may be imposed consecutively pursuant to this subdivision if a person is convicted of at least one offense specified in subdivision (e). If the term is imposed consecutively pursuant to this subdivision, it shall be served consecutively to any other term of imprisonment, and shall commence from the time the person otherwise would have been released from imprisonment. The term shall not be included in any determination pursuant to Section 1170.1." (§ 667.6, subd. (c).)

Three types of spousal rape are listed in section 667.6, subdivision (e)(2) as qualifying offenses. Pertinent here is spousal rape committed in violation of section 262, subdivision (a)(1): rape "accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another." (§ 262, subd. (a)(1); see § 667.6, subd. (e)(2).) Where section 667.6, subdivision (c) applies – that is, where the defendant's crimes involved the same victim on the same occasion – a trial court has discretion to choose between imposing sentence pursuant to section 1170.1 or section 667.6. (*People v. Belmontes, supra,* 34 Cal.3d at p. 345.)

If a defendant is convicted of qualifying sex offenses and nonsex offenses, "a trial court may properly designate the longest nonsex offense as the principal term and may treat all of the sex offenses under section 667.6, subdivision (c)." (*People v. Belmontes, supra,* 34 Cal.3d at p. 346.) *Belmontes* explained: "In exercising its sentencing discretion, the court should make an individual determination as to each sex offense.

5

Thus, a court could choose to have a sex offense serve as the principal term if it carried the longest sentence and to treat all other offenses -- regardless of whether they include sex offenses listed in section 667.6, subdivision (c) -- as subordinate terms under section 1170.1. A court could alternatively choose to treat some of the sex offenses under the principal/subordinate scheme of section 1170.1, while imposing fully consecutive sentences on others under section 667.6, subdivision (c). The computations under sections 1170.1 and 667.6, subdivision (c) are to be done separately; the total of the section 667.6 computation would then be added to the section 1170.1 total." (*Ibid*.)

Pursuant to the plain language of the statute and *Belmontes,* Pleitez appears to be correct that the court misapplied the statute. Given that the court selected the sex offense as the principal term, it could not use section 667.6, subdivision (c) to impose full consecutive terms for the nonsex offenses, because section 667.6 authorizes full consecutive terms only for sex offenses. Therefore, having selected the only sex offense at issue as the principal term, sentence on the other crimes should have been imposed pursuant to section 1170.1.

Pleitez argues that this court should make the necessary reductions to his sentence. However, we agree with the People that remand for resentencing is appropriate. On remand, the trial court may either (1) keep the spousal rape count as the principal term, and sentence the other two counts pursuant to section 1170.1; or (2) make the corporal injury upon a spouse (the nonsex offense with the longest term) the principal term, impose a full consecutive term for the spousal rape, and sentence the battery under section 1170.1; or (3) sentence all the offenses under section 1170.1.

2. *The sex offender registration requirement*

California law includes both mandatory and discretionary sex offender registration requirements. Section 290, the mandatory provision, requires persons convicted of certain specified sex crimes to register as sex offenders as long as they live or work in California. (§ 290, subds. (b), (c);[5] *People v. Mosley* (2015) 60 Cal.4th 1044, 1048

---

[5] Section 290, subdivision (b) provides: "Every person described in subdivision (c),

6

(*Mosley*).)  If the conviction is for an offense other than those automatically requiring registration, the court may exercise its discretion under section 290.006, the discretionary provision, to impose a registration requirement, if the court finds the offense was sexually motivated or compelled, and that registration is justified by the defendant's risk of reoffense.  (*Mosley, supra,* at p. 1048.)

Here, the trial court imposed a lifetime sex offender registration requirement on Pleitez pursuant to the mandatory provision, section 290, subdivisions (b) and (c), based on the spousal rape conviction (count 17, § 262, subd. (a)(1).)  Section 262 defines rape of a spouse as an act of sexual intercourse accomplished by any of several prohibited means.  As relevant here, spousal rape is committed if the perpetrator uses "force, violence, duress, menace, or fear of immediate and unlawful bodily injury."  (§ 262, subd. (a)(1).)  Section 290 requires that persons convicted of spousal rape register as sex offenders, but *only* if the rape "involve[ed] the use of force or violence for which the person is sentenced to the state prison."  (§ 290, subd. (c); *People v. Mason* (2013) 218 Cal.App.4th 818, 822.)  Thus, in order for the section 290 registration requirement to be triggered here, the rape must have been accomplished by means involving force or violence, rather than by duress, menace, or fear.

Both the corporal injury offense and the spousal rape offense arose from the May 8, 2012, attack on B.  Section 654 prohibits multiple punishment for separate offenses arising out of a single occurrence, where all of the offenses were incident to one

for the rest of his or her life while residing in California, or while attending school or working in California, as described in Sections 290.002 and 290.01, shall be required to register with the chief of police of the city in which he or she is residing, or the sheriff of the county if he or she is residing in an unincorporated area or city that has no police department, and, additionally, with the chief of police of a campus of the University of California, the California State University, or community college if he or she is residing upon the campus or in any of its facilities, within five working days of coming into, or changing his or her residence within, any city, county, or city and county, or campus in which he or she temporarily resides, and shall be required to register thereafter in accordance with the Act."  Subdivision (c) lists the offenses that trigger the registration requirement.

objective. (*People v. McKinzie* (2012) 54 Cal.4th 1302, 1368, disapproved on another ground by *People v. Scott* (June 8, 2015, S064858) __ Cal.4th __, fn. 3 [2015 Cal.Lexis 3903]; *People v. Calderon* (2013) 214 Cal.App.4th 656, 661.) At sentencing, the trial court declined to stay sentence on the corporal injury count pursuant to section 654. Defense counsel argued that the court could not impose both the sex offender registration requirement and separate punishment. Counsel argued that if section 654 did not apply, "ipso facto . . . the court is making a finding that the acts were divisible [and] the intent and objectives were divisible and that the spousal rape was an afterthought, if you will, and that the force and violence attributable to the 273.5 [corporal injury upon a spouse] does not apply to the 262 [spousal rape]." The trial court rejected this argument, explaining its view that "[t]he [corporal injury] and [spousal rape] are predominantly independent of each other and the crimes involve separate acts of violence." Additionally, the court found the high term was warranted for the spousal rape "based on the aggravating factors that the crime involves great violence, great bodily harm, threat of great bodily harm, the vulnerability of the victim, and the defendant has engaged in violent conduct that indicates a serious danger to society."

In his opening brief, Pleitez contended that the section 290 sex offender registration requirement must be reversed because there was no specific jury finding of force and violence relative to the spousal rape. The People conceded the point, but averred that on remand, the trial court could exercise its discretion to impose the requirement pursuant to section 290.006.

The parties are correct that there was no jury finding on the issue. The verdict form did not include an express finding regarding the use of force or violence. It stated only that Pleitez was guilty of spousal rape "as charged in count 17 of the amended information." The amended information alleged that Pleitez "did unlawfully have sexual intercourse with B. P., the defendant's spouse, against the will by means of *force, violence, duress, menace and fear of immediate and unlawful bodily injury* on B. P. and another." (Italics added.) CALCRIM No. 1000, as given to the jury, similarly provided that Pleitez was guilty of the crime of spousal rape if he accomplished nonconsensual

8

intercourse "[b]y force, violence, duress, menace, or fear of immediate and unlawful bodily injury to the woman." Thus, neither the verdict form, the information, nor the jury instructions required a finding the rape was committed by force or violence; it could have been accomplished by means of duress, menace, or fear.

B. testified that Pleitez used force when committing the rape. But the jury appears to have discredited portions of her testimony. As noted, it acquitted Pleitez of 12 of the 15 counts charged. Especially pertinent here, B. testified that, during the May 8 rape, Pleitez forcibly sodomized her. Pleitez was charged in count 7 with sodomy by the use of force based on the incident. However, the jury *acquitted* Pleitez of this crime. It is therefore unclear whether the jury found the May 8, 2012 rape was committed by means of force or violence.

However, as noted, the *trial court* expressly found the rape involved violence. We asked the parties to provide additional briefing on the question of whether the factual finding necessary to trigger the section 290 registration requirement could be made by the trial court, rather than the jury. In light of the California Supreme Court's recent decision in *Mosley*, *supra*, 60 Cal.4th 1044, the parties concede that it can.[6]

*Mosley* "confront[ed] a single, narrow issue. *Apprendi v. New Jersey* (2000) 530 U.S. 466 . . . (*Apprendi*) held that the Sixth Amendment generally requires a *jury* to find 'any fact that increases the *penalty for a crime* beyond the prescribed statutory maximum.' [Citation.] If a *judge* makes the findings underlying his or her discretionary order that a convicted criminal defendant must register as a sex offender, is the order invalid under *Apprendi* insofar as it includes registered sex offender *residency restrictions* imposed by Proposition 83, the Sexual Predator Punishment and Control Act: Jessica's Law . . . .?" *Mosley* concluded, "the answer is no." (*Mosley, supra,* 60 Cal.4th at p. 1048.) *Mosley* reiterated the principle that a sex offender registration requirement,

---

[6] Pleitez argues that *Mosley* was wrongly decided, but appropriately recognizes that this court is bound by the Supreme Court's holding. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

9

by itself, does not constitute punishment or penalty for purposes of *Apprendi.* (*Mosley, supra,* at p. 1070; cf. *Oregon v. Ice* (2009) 555 U.S. 160.) *Mosley* concluded that even with the residency requirements imposed by Jessica's Law, the sex offender registration requirement was not punitive, for three reasons, two of which are relevant here. First, *Apprendi* does not apply to sentencing decisions in which juries played no factfinding role at common law. Sex offender residency restrictions are devices, developed by sovereign states in modern times, that were not historically entrusted to juries. (*Mosley, supra,* at pp. 1049-1050, 1060.) "A requirement that juries must always authorize them would often interfere with their intended and effective implementation." (*Id.* at p. 1050.) Second, "the residency restrictions, like sex offender registration itself, cannot facially be considered anything other than a legitimate, nonpunitive regulatory device" with no retributive intent. (*Ibid.*)

Given that the sex offender registration requirement does not constitute punishment, the trial court, as opposed to the jury, could make the necessary factual finding that the spousal rape involved force or violence. The plain language of section 290 does not require that a jury, rather than the court, make the requisite finding. And, as discussed *ante*, there was substantial evidence supporting the trial court's finding. Accordingly, the fact the jury did not expressly find the offense involved force or violence does not provide a basis for striking the registration requirement.

However, this does not end our analysis. As noted, section 654, subdivision (a), bars multiple punishments for separate offenses arising out of a single occurrence where all were incident to an indivisible course of conduct or a single objective. (*People v. Calderon, supra,* 214 Cal.App.4th at p. 661.) If all the offenses were merely incidental to, or were the means of accomplishing one objective, the defendant may be found to have harbored a single intent and therefore may be punished only once. (*People v. Capistrano* (2014) 59 Cal.4th 830, 885; *People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.) If the defendant harbored multiple or simultaneous objectives, independent of and not merely incidental to each other, he or she may be punished for each violation committed in pursuit of each objective even though the violations share common acts or

10

were parts of an otherwise indivisible course of conduct.  (*People v. Jones, supra*, at p. 1143.)  Whether section 654 applies is a question of fact for the trial court, and its findings will be upheld if there is substantial evidence to support them.  (*People v. Kurtenbach* (2012) 204 Cal.App.4th 1264, 1289; *People v. Jones*, *supra*, at p. 1143.)

In order to impose *both* the sex offender registration requirement *and* sentence on both crimes, it would have been necessary for the trial court to find that both crimes involved acts of violence or force, and each was carried out with a separate intent and objective.  In supplemental briefing, the People argue that there was substantial evidence to support the court's finding that Pleitez harbored separate intents and objectives in the two crimes.  When Pleitez found Omar in his son's room, he became angry, asked B. what Omar was doing there, pushed Omar out of the house, and told B. they would "have a talk" about Omar's presence once Omar was gone.  He then threw B. on the bed, tore off her clothes, hit her repeatedly in the face with a closed fist, and threw her against the wall.  The trial court could have concluded Pleitez's intent and objective in committing these actions was to punish B. for allowing Omar to stay at the house.

Then, Pleitez began kissing B. and touching her breast.  B. pushed him away, and they "struggle[ed] on the bed."  B. testified that after that, "he started grabbing me by force.  He started . . . kissing me and then he pulled my hair.  I pushed him away and I said no."  She tried to push his face away with her hands, but he grabbed her hands and held them above her head, so she could not move them.  He then put his penis in her vagina, while she was "still struggling."  From these facts, the trial court could conclude that after Pleitez's anger and violent reaction to finding Omar at the house subsided, his intent changed and his objective became sexual gratification.  As the People argue, the evidence supported a finding that the "beating of the victim as punishment for her allowing [Omar] to stay at appellant's home was divisible from appellant's separate desire for sexual gratification."

The evidence also supported a finding that both the corporal injury count and the spousal rape involved force or violence.  During the corporal injury offense, Pleitez punched B. and threw her against the wall.  During the rape, he "grabb[ed her] by force,"

11

struggled with her, and pinned her arms so she could not push him away.  Accordingly, imposition of the registration requirement and multiple punishment was proper.

DISPOSITION

Pleitez's sentence is vacated and the matter is remanded for resentencing in accordance with the opinions expressed herein.  In all other respects, the judgment is affirmed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



ALDRICH, J.


We concur:



EDMON, P. J.



KITCHING, J.