Filed 2/27/23  P. v. Espinoza CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOEL AMADOR ESPINOZA,<br><br>Defendant and Appellant. | F083349<br><br>(Super. Ct. No. 07CM0666B-003)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kings County.  Valerie R. Chrissakis, Judge.

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary, Erin Doering and Lewis A. Martinez, Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

In 2007, appellant Joel Amador Espinoza and his codefendant Michael Angelo Arreola were convicted by jury of first degree murder (Pen. Code,[1] § 187, subd. (a)). They were sentenced to an indeterminate term of 25 years to life in state prison. Following the passage and enactment of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill No. 1437), Espinoza filed a petition seeking resentencing relief under former section 1170.95.[2] Following the appointment of counsel and the submission of briefing by the parties, the trial court denied Espinoza's petition.

Espinoza raises multiple claims on appeal. First, he contends the trial court erred in denying his petition because the record does not conclusively show that he was the actual killer. Second, Espinoza asserts that the trial court erred by engaging in improper factfinding at the prima facie stage, and by relying upon facts recited in our prior opinion. Third, Espinoza suggests that the trial court may also have improperly relied upon the preliminary hearing transcript in denying his petition. Fourth, he argues the trial court improperly concluded there was substantial evidence to support his murder conviction.

Espinoza concedes that the jury was not instructed on felony murder or the natural and probable consequences doctrine. However, he contends the record does not conclusively negate the possibility that malice was imputed to him. Following our independent review of the record, we conclude that it does. Because Espinoza is ineligible for relief as a matter of law, none of the errors asserted by Espinoza are prejudicial. We therefore affirm.

---

[1]     All further undefined statutory citations are to the Penal Code unless otherwise indicated.

[2]     Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change in text (Stats. 2022, ch. 58, § 10). Espinoza filed his petition prior to this renumbering, and he therefore referred to the statute as section 1170.95 in his petition.

# PROCEDURAL HISTORY

On September 26, 2007, a jury found Espinoza and Arreola guilty of first degree murder (§ 187, subd. (a)). The trial court sentenced Espinoza and Arreola to an indeterminate term of 25 years to life in state prison.

On March 23, 2020, Espinoza filed a petition for resentencing under former section 1170.95.

On April 2, 2020, the People filed a brief opposing Espinoza's petition for resentencing.

On July 21, 2020, the superior court found that Espinoza had made a prima facie showing that his conviction fell within the provisions of section 1170.95, and appointed counsel to represent Espinoza.

On June 15, 2021, Espinoza filed a reply brief.

On August 17, 2021, the superior court issued an order denying Espinoza's petition.[3]

Espinoza filed a timely notice of appeal.

# STATEMENT OF FACTS

The following statement of facts is derived from the unpublished opinion following Espinoza's direct appeal (*People v. Espinoza* (Jan. 27, 2009, F054237) [nonpub. opn.]):

> "Espinoza's 15-year-old sister testified that when she awoke on the night of the killing her brother told her, 'I got in a fight with some guy.' She heard a noise coming from the garage like the 'little swinging noise' of a 'baseball bat hitting something.' Moments later, she saw Arreola inside the garage, with an 'evil look on his face,' standing with a baseball bat over a boy lying on the floor who was

---

[3] We do not recite the reasons recited in the superior court's order of denial because our task on review is to examine the correctness of the trial court's ruling, not the reasons underlying the court's ruling. (See generally *People v. Ross* (1994) 28 Cal.App.4th 1151, 1157.)

making a gurgling sound as if he were 'trying to breathe' but 'choking on something.'

"Arreola told Espinoza's sister, 'The fool rushed me.' Back inside the house, he said, 'Tell your mom I'm sorry, I didn't choose the place or the time, whatever happens happens in the past.' Comparison of the genetic profile of blood found inside Espinoza's garage with genetic samples from Arreola, Espinoza, and Gonzales eliminated Arreola and Espinoza as contributors, but not Gonzales. The probability of randomly selecting a person with that profile is one in 39 billion Hispanics.

"Arreola and Espinoza were friends. Both confided in Modesto[4] that Gonzales was killed for talking to the police. Espinoza admitted the body was in his garage. Both acknowledged difficulty getting rid of the body. Ashley Martinez bore Gonzales's children but at the time of the killing lived with her boyfriend Arreola.

"Gonzales's partially burnt, somewhat decomposed, and still smoldering body was found wrapped in carpeting tied with knotted green electrical cord dumped on a rural roadway. Similar electrical cord with like knots was found in Espinoza's garage, as was a hypodermic needle. Post-mortem testing of Gonzales's body showed a high level of methamphetamine but no metabolite amphetamine at all. Metabolite amphetamine, a breakdown product of the parent drug methamphetamine, usually starts appearing within about an hour after the use of methamphetamine. The burning and decomposition of his body possibly concentrated the methamphetamine, but the pathologist nonetheless inferred that Gonzales died shortly after ingestion, possibly from administration of methamphetamine by another person.

"The cause of Gonzales's death was not the high level of methamphetamine in his body but blunt force trauma to the head causing basilar skull and cervical fractures. A baseball bat, a broom handle, a two-by-four, or a two-by-six could have caused the fatal injuries, but the pathologist opined that kicking and stomping were more likely. The body had a skull fracture from one earlobe to the other running across the top of his head. The neck was fractured, the mouth area was crushed, and one eye socket was 'sunken in' from the severity of the beating he suffered.

---

[4]  Modesto is the last name of one of the eyewitnesses who testified at Espinoza's trial.

"In short, the evidence shows a savage revenge murder in the solitude of a garage during the early morning hours after either the voluntary or involuntary ingestion of a large amount of methamphetamine made Gonzales especially vulnerable to attack. A sufficiency of the evidence of planning, motive, and method alike is in the record to show deliberation and premeditation."

## **DISCUSSION**

Espinoza contends the trial court prejudicially erred in denying his petition on multiple grounds. Assuming error, we find no prejudice. As discussed further below, Espinoza is ineligible for resentencing relief as a matter of law. Thus, the trial court did not prejudicially err in denying his petition for resentencing relief.

## **I.      Background:  Senate Bill No. 1437**

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 "to amend the felony murder rule and the natural and probable consequences doctrine ... to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (§ 1172.6, subd. (f); Stats. 2018, ch. 1015, § 1.) Senate Bill No. 1437 accomplished this task by adding three separate provisions to the Penal Code. (*People v. Gentile* (2020) 10 Cal.5th 830, 842 (*Gentile*).)

First, to amend the natural and probable consequences doctrine, the bill added section 188, subdivision (a)(3), which requires a principal to act with malice aforethought before he or she may be convicted of murder. (§ 188, subd. (a)(3); accord, *Gentile*, *supra,* 10 Cal.5th at pp. 842-843.)

Second, to amend the felony murder rule, Senate Bill No. 1437 added section 189, subdivision (e), which provides the following:

"A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven:  [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the

5.

underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e); accord, *Gentile*, *supra*, 10 Cal.5th at p. 842.)

Finally, Senate Bill No. 1437 added former section 1170.95 to provide a procedure for those convicted of a qualifying offense "to seek relief under the two ameliorative provisions above." (*Gentile*, *supra,* 10 Cal.5th at p. 843.) This procedure is available to persons convicted of "felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter." (Former § 1170.95, subd. (a).)

To seek relief under now renumbered section 1172.6, a petitioner must file a petition in the superior court averring that: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder[; and] [¶] (3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§§ 1172.6, subds. (a)(1)-(3); see also 1172.6, subd. (b)(1)(A).) Additionally, the petition must indicate "[w]hether the petitioner requests the appointment of counsel." (§ 1172.6, subd. (b)(1)(C).)

If a petition fails to comply with these requirements, "the court may deny the petition without prejudice to the filing of another petition." (§ 1172.6, subd. (b)(2).) If the petition complies with subdivision (b)'s requirements, then the court proceeds to subdivision (c) to assess whether the petitioner has made "a prima facie showing" for relief. (§ 1172.6, subd. (c).)

## II. Analysis

Espinoza and his codefendant, Arreola, were both convicted of first degree murder. The prosecutor theorized Espinoza and Arreola were both direct perpetrators of the murder, or alternatively, that one of them had acted as the direct perpetrator and the other, as a direct aider and abettor. The jury was not instructed on the felony murder theory or the natural and probable consequences doctrine. Nor was there any other theory of vicarious murder liability upon which Espinoza's conviction for first degree murder could be based. Based upon the existing record, the jury necessarily found that Espinoza was either the actual killer, or that he was a direct aider and abettor to the murder, that he shared his codefendant's intent to kill, and in fact aided in the commission of that crime. Espinoza is therefore ineligible for resentencing relief as a matter of law.

Espinoza concedes that "this case did not go to the jury on a theory of felony murder or on a traditional natural and probable consequences theory." He nonetheless maintains that he could have been convicted of murder based upon a theory of vicarious murder liability involving imputed malice. According to Espinoza, because the jury was instructed on aiding and abetting and implied malice, and in light of the fact that he was not conclusively shown to be the actual killer, "the actual killer's express malice could readily have been imputed to [him]." Espinoza's claim erroneously conflates two distinct concepts: implied malice and imputed malice.

The record shows that the jury was instructed on implied malice pursuant to CALCRIM No. 520 [First or Second Degree Murder With Malice Aforethought (Pen. Code, § 187)]. Implied malice depends upon a determination that the defendant subjectively appreciated the risk to human life in the commission of an act. (*People v. Watson* (1981) 30 Cal.3d 290, 296-297). Implied malice is expressly codified under subdivision (a)(2) of section 188, and it remains a viable theory of murder liability. (See

*People v. Powell* (2021) 63 Cal.App.5th 689, 714; *Gentile, supra,* 10 Cal.5th at p. 850 ["notwithstanding Senate Bill 1437's elimination of natural and probable consequences liability for second degree murder, an aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life"]; accord, *People v. Glukhoy* (2022) 77 Cal.App.5th 576, 591 & *People v. Soto* (2020) 51 Cal.App.5th 1043, 1056.)

In contrast, imputed malice, which is based upon the imputation of malice to the defendant based upon his or her participation in a crime, was abolished by the enactment of Senate Bill No. 1437. (*People v. Roldan* (2020) 56 Cal.App.5th 997, 1002, citing § 188, subd. (a)(3) [" '[m]alice shall not be imputed to a person based solely on his or her participation in a crime' "].) The fact that implied malice was referenced in the pattern jury instruction on murder and that the prosecutor discussed implied malice in closing argument does not mean that Espinoza was potentially convicted of murder based upon imputed malice. As discussed, these are distinct theories of murder liability. (See *People v. Glukhoy*, *supra*, 77 Cal.App.5th at p. 590 ["for second degree murder based on implied malice, there is no imputation of malice because … the direct aider and abettor must have the same mental state as the actual perpetrator of the charged crime: the direct aider and abettor must act with knowledge that *the act* is dangerous to human life and with conscious disregard for human life"].) The instructions provided simply did not provide the jury with a pathway to convict Espinoza of first degree murder by imputing malice to him.

Espinoza nonetheless suggests that the prosecutor's comments in closing argument and the jury instructions given permitted the jury to convict him of first degree murder based upon imputed malice. We disagree.

The prosecutor's closing comments in argument, considered in the context of the jury instructions given, make clear that the jury could only have convicted Espinoza of first degree murder if the People had proven, beyond a reasonable doubt, that he acted with the intent to kill. In other words, that he harbored express malice. (*People v. Coley* (2022) 77 Cal.App.5th 539 ["[a]n intent to kill is the equivalent of express malice"].) This is so regardless of whether the jury ultimately concluded Espinoza was the actual killer or a direct aider and abettor. (See, e.g., *People v. Estrada* (2022) 77 Cal.App.5th 941, 943 [a petitioner convicted of first degree murder as a "classic" aider and abettor is ineligible for resentencing relief as a matter of law; instructing the jury with CALCRIM Nos. 400 and 401 does not render the petitioner eligible for relief].)

The prosecutor told the jury: "[w]hen we talk about first degree murder, we get into willful, deliberate and premeditation. In order to sign the verdict form guilty for first degree murder, you all have to agree this murder was willful, deliberate and with premeditation." The jury instructions explained that to prove that the defendants had "acted willfully" the prosecutor had to prove that they had "intended to kill." Thus, it is clear from the record that the jury's verdict of first degree murder required a finding that Espinoza and his codefendant had acted with express malice.[5] Although the prosecutor discussed implied malice in closing argument, that does not mean that malice could have been imputed to Espinoza based solely upon his participation in a nonhomicide offense.

Espinoza contends that *People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi*) is instructive. As we understand Espinoza's argument, *Langi* supports the conclusion that a

---

[5] The jury instructions are referenced in the transcripts from Espinoza's trial, the prosecutor's comments in closing argument, and PowerPoint slides that were made part of the record on appeal. Additionally, the prosecutor attached jury instructions from Espinoza's criminal trial to his motion in opposition to Espinoza's petition for resentencing relief.

petitioner may have been convicted upon a theory of imputed malice based upon the pattern aiding and abetting instruction (CALCRIM No. 400), even if the jury was not explicitly instructed upon the felony murder theory or the natural and probable consequences doctrine.

In *Langi*, the petitioner was convicted of second degree murder as one of four men who had beaten the victim to death. (*Langi, supra,* 73 Cal.App.5th at p. 975.) The trial court summarily denied Langi's petition for resentencing under former section 1170.95 at the prima facie stage. (*Langi*, at p. 976.) The record did not conclusively establish, without factfinding, that Langi had thrown the fatal punch, and the jury instructions failed to explain that "to be guilty as a direct aider and abettor of second degree murder, an accomplice must have acted with the mental state of implied malice." (*Id.* at p. 983.)

The appellate court reversed the trial court's denial of Langi's petition, finding that the pattern instructions on aiding and abetting (CALJIC Nos. 8.31 & 3.01)[6] "create[d] an ambiguity under which the jury may find the defendant guilty of aiding and abetting second degree murder without finding that he personally acted with malice." (*Langi, supra,* at 73 Cal.App.5th at p. 982.) The court explained that "under the instructions that were given, the jury was entitled to conclude that, to be guilty as an aider

---

[6] CALJIC No. 8.31 states the following, in relevant part: "Murder of the second degree is … the unlawful killing of a human being when: [¶] 1. The killing resulted from an intentional act, [¶] 2. The natural consequences of the act are dangerous to human life, and [¶] 3. The act was deliberately performed with the knowledge of the danger to, and with conscious disregard for, human life. [¶] When the killing is the direct result of such an act, it is not necessary to prove that the defendant intended that the act would result in the death of a human being."

CALJIC No. 3.01 provides: "A person aids and abets the [commission] of a crime when he or she: [¶] (1) With knowledge of the unlawful purpose of the perpetrator, and [¶] (2) With the intent or purpose of committing or encouraging or facilitating the commission of the crime, ... [¶] (3) By act or advice aids, promotes, encourages or instigates the commission of the crime."

and abettor of second degree murder, [Langi] need only have intended to encourage the perpetrator's intentional act—in this case, punching [the victim]—whether or not [Langi] intended to aid or encourage [the victim's] killing, and whether or not he personally knew of and disregarded the risk of such a killing." (*Id*. at p. 983.) In other words, the jury could have convicted Langi of murder as an aider and abettor without finding that he had acted with express or implied malice.

Here, unlike in *Langi*, Espinoza and Arreola were convicted of first degree murder. The jury instructions given and the verdicts rendered make clear that the jury found the prosecutor had proven, beyond a reasonable doubt, that Espinoza had acted with express malice—whether or not he was the actual killer. The jury instructions foreclosed the jury from potentially convicting Espinoza of first degree murder based upon a direct perpetrator's intent to commit a nonhomicide offense, and solely upon Espinoza's participation in such an act. There were no other instructions which would have permitted the jury to convict Espinoza of first degree murder by imputing malice to him. (See, e.g., *People v. Maldonado* (2023) 87 Cal.App.5th 1257, 1266 [jury instructions, including instruction on lying-in-wait murder, which does not require an intent to kill, permitted the jury to convict the defendant of first degree murder as an aider and abettor based upon imputed malice].) Thus, *Langi* is of no assistance to Espinoza.

Finally, Espinoza alleges that the trial court reversibly erred by committing the following errors: (1) The trial court improperly engaged in factfinding when it claimed Espinoza "was an actual killer" and that the record "suggest[s] actual malice." (2) The trial court erroneously relied on this court's prior appellate opinion in making improper factual findings and drawing legal conclusions; (3) the trial court may have improperly relied upon the preliminary examination transcript in denying Espinoza's petition; and (4) the trial court erred when it claimed "sufficient evidence" supported the conviction. We

11.

conclude that none of the errors asserted, considered independently or in their totality, demonstrate reversible error.

To demonstrate prejudice from the denial of a section 1170.95 petition before the issuance of an order to show cause, the petitioner must show it is reasonably probable that, absent error, his or her petition would not have been summarily denied without an evidentiary hearing. (*People v. Lewis* (2021) 11 Cal.5th 952, 972-974; see *People v. Watson* (1956) 46 Cal.2d 818, 836.) Because the record of conviction conclusively establishes that the jury was not instructed on the felony murder theory or the natural and probable consequences doctrine, or any other theory which would have permitted it to convict Espinoza of murder based upon imputed malice, Espinoza is ineligible for resentencing relief as a matter of law. Thus, none of the errors asserted by Espinoza support reversal of the trial court's order denying his petition for resentencing relief.

## **DISPOSITION**

The trial court's August 17, 2021 order denying Espinoza's petition is affirmed.


SMITH, J.

WE CONCUR:


PEÑA, Acting P. J.


DE SANTOS, J.